NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2186-12T3

LAMONT W. GARNES,

    Plaintiff,

and

ROBERT A. KLEIN,

    Plaintiff-Respondent,

v.

PASSAIC COUNTY and the PASSAIC
COUNTY SHERIFF'S DEPARTMENT,

    Defendants-Appellants,

and

JERRY SPEZIALE, SHERIFF,

    Defendant.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 24, 2014**
>
> **APPELLATE DIVISION**

Submitted May 29, 2014 — Decided October 24, 2014

Before Judges Grall, Waugh and Nugent.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-56-10.

Florio Perrucci Steinhardt & Fader, L.L.C., attorneys for appellants (J. Andrew Kinsey, of counsel; Veronica P. Hallett, on the brief).

                    Resnick Law Group, P.C., attorneys for
                    respondent (Gerald Jay Resnick, on the
                    brief).

     The opinion of the court was delivered by

GRALL, P.J.A.D.

     Plaintiffs Robert A. Klein and Lamont W. Garnes filed a

complaint alleging that Passaic County (the County), the Passaic

County Sheriff's Department (the PCSD) and the former Sheriff,

Jerry Speziale, violated the Law Against Discrimination (LAD),

N.J.S.A. 10:5-1 to -42.  Specifically, they contended that their

employer used age as a determinative factor in identifying the

sheriff's investigators whose employment would be terminated to

reduce personnel costs in a budgetary crisis and those who would

be rehired when the budget permitted.  By statute, sheriff's

investigators serve at the pleasure of the sheriff appointing

them and are in the unclassified service.  N.J.S.A. 40A:9-117a.

Plaintiffs dismissed their claims against Sheriff Speziale, but

not the PCSD, prior to trial.  They sought damages from the

County in the amount of past and future lost wages, damages for

emotional distress and punitive damages.

     The jury rejected plaintiffs' claims of age discrimination

in rehiring and determined that Garnes failed to prove that the

County and the PCSD, collectively defendants, intentionally

discriminated against Garnes in terminating his employment.  In

contrast, the jury found in favor of Klein on one of his claims — discriminatory termination.  The jury awarded Klein $177,700 for past wages but no punitive damages.  Following the verdict, the judge increased the damages award by $18,279 to account for taxes.  The judge also awarded Klein a $389,593.33 counsel fee (consisting of a $292,195 lodestar plus a $97,398.33 fee enhancement) plus $17,459.11 for expenses and $14,890.60 for pre-judgment interest.

Defendants appeal the $617,922.04 judgment in favor of Klein.  Garnes does not challenge the verdict against him. Klein did not file a cross-appeal.

On appeal defendants urge reversal on several grounds. They contend that plaintiffs, having dismissed their claim against the sheriff, should not have been permitted to maintain an action against them based on vicarious liability.  They argue the LAD should be interpreted as the United States Supreme Court interpreted the Age Discrimination in Employment Act (ADEA) in Gross v. FBL Financial Services, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009), and contend that Klein did not adduce adequate evidence to meet that standard.  They further argue

that the evidence was inadequate to support the verdict in favor of Klein.[1]

Defendants also challenge the amount of the judgment. They submit that even if Klein had established age discrimination, he could not establish damages because, as an "at will employee," he had no expectation of continued employment. In addition, they contend that the counsel fee award is excessive. For the reasons that follow, we affirm.

I

Before setting forth the facts of the case, we address defendants' claims that present questions of law independent of the evidence presented at trial. On such matters, a reviewing court owes no deference to the trial court's determinations and

---

[1] Defendants' argument on the adequacy of the evidence includes a reference to the verdict being "against the weight" of the evidence. The record on appeal does not include the transcript of defendants' post-trial motion, but it appears from the notice of motion and the form of order defendants submitted that they moved for a judgment notwithstanding the verdict, R. 4:40-2, and remittitur, not for a new trial on liability on the ground that the verdict on liability was against the weight of the evidence, R. 4:49-1(a). We note that the judge used the form order defendants submitted to memorialize his denials of those two types of relief, and he indicated on the order that he had stated his findings on the record on July 13, 2012. Because we do not have that transcript and because a claim that the verdict was against the weight of the evidence cannot be raised on appeal if it was not raised by way of motion for a new trial in the trial court, R. 2:10-1, we do not address defendants' remark about the verdict on liability being against the weight of the evidence.

decides the question de novo. State v. Coles, 218 N.J. 322, 342 (2014).

A.

Defendants argue that plaintiffs should not have been permitted to maintain this action following their dismissal of their claims against the sheriff. They contend that because sheriff's investigators serve at the pleasure of the county sheriff, who is a constitutional officer with the exclusive statutory authority to hire and fire sheriff's investigators, the County cannot be held vicariously liable even if the sheriff unlawfully and intentionally terminated plaintiffs' employment because of their age.

The Federal Court of Appeals for the Third Circuit, applying New Jersey law, rejected a claim similar to defendants' in Coleman v. Kaye, 87 F.3d 1491, 1495 (3d Cir. 1996), cert. denied, 519 U.S. 1084, 117 S. Ct. 754, 136 L. Ed. 2d 691 (1997), a case in which a county argued that it could not be held vicariously liable for the county prosecutor's violation of the LAD in deciding whether to promote one of his investigators. Coleman is instructive because county prosecutors and county sheriffs both have exclusive authority to hire and terminate

their investigators. Id. at 1502; see N.J.S.A. 2A:157-10; N.J.S.A. 40A:9-117a.[2]

In Coleman, the "district court found that the County of Monmouth could not be held liable under the New Jersey LAD premised upon a theory of respondeat superior for the actions of" the county prosecutor, because "there was no master/servant relationship between the County of Monmouth and" its prosecutor. Id. at 1496. The Third Circuit, applying New Jersey law, reversed that determination.

Applying New Jersey law, the Court of Appeals determined that the prosecutor "was acting as a local, county official when he denied [the plaintiff's] applications for promotion," and held "that the discriminatory acts of [the prosecutor] and his subordinates may be imputed to the County of Monmouth since [the prosecutor] was the final policymaking authority acting on behalf of Monmouth County in the prosecutor's office." Id. at 1506.

We see no basis for reaching a different conclusion in this case. For all practical and pertinent purposes, a county sheriff's and a county prosecutor's statutory authority over employment decisions involving investigators is the same,

---

[2] Both county prosecutors and county sheriffs have terms fixed in the constitution. N.J. Const. art. VII, § II, ¶¶ 1 & 2.

exclusive and independent of the county. Moreover, the New Jersey Supreme Court has followed the reasoning in Coleman twice — most recently in Lavezzi v. State, 219 N.J. 163 (2014), and a decade earlier in Wright v. State, 169 N.J. 422, 441-42 (2001).

We recognize that Lavezzi, Wright and Coleman all involved a separate question of the State's vicarious liability in matters related to law enforcement that is not at issue here, but our Supreme Court has agreed with the Third Circuit that a county prosecutor performs his or her administrative functions "'on behalf of the county.'" Lavezzi, supra, 219 N.J. at 175 (quoting Coleman, supra, 87 F.3d at 1499); accord Wright, supra, 169 N.J. at 442. And, in discussing Coleman and decisions of our courts, the Supreme Court has concluded that a county prosecutor's "liability derived from the prosecutor's administrative functions . . . is deemed to be the county's responsibility." Lavezzi, supra, 219 N.J. at 178.

On the foregoing authority, we conclude that neither the exclusivity of the sheriff's authority over employment of sheriff's investigators nor plaintiffs' dismissal of their claims against the sheriff himself had any bearing on the County's liability for any violation of the LAD by the PCSD through the conduct of the sheriff's subordinates who terminated

plaintiffs' employment.  The liability of the sheriff's subordinate employees may be imputed to the County.

B.

Defendants also argue that the United States Supreme Court's interpretation of the ADEA, 81 Stat. 602, as amended 29 U.S.C. §§ 621 to 634, in Gross, supra, 557 U.S. at 173-79, 129 S. Ct. at 2348-52, 174 L. Ed. 2d at 126-30, requires a special interpretation of the LAD where discrimination based on age is alleged.  Both statutes require a plaintiff to prove that an adverse employment action was taken "because of" the plaintiff's age.  29 U.S.C. § 623(a)(1); N.J.S.A. 10:5-12(a).

The Court's decision in Gross rests on its interpretation of the plain language of the ADEA which prohibits employment discrimination "because of [the] individual's age," 29 U.S.C. § 623(a)(1).  The Court determined that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act."  Id. at 176, 129 S. Ct. at 2350, 174 L. Ed. 2d at 128.  As defendants in this case correctly note, the LAD also makes it unlawful "[f]or an employer, because of the . . . age . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless

justified by lawful considerations other than" age.  N.J.S.A. 10:5-12a.

In Gross, the Court cited its decision in Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706, 123 L. Ed. 2d 338, 347 (1993), a case based on disparate treatment attributable to age.  The Court described Hazen Paper Co. as holding that such a claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decision making] process and had a determinative influence on the outcome."  Gross, supra, 557 U.S. at 176, 129 S. Ct. at 2350, 174 L. Ed. 2d at 128.

We discern no significant difference between the Court's description of the essential showing in Gross, and our Supreme Court's description of what a plaintiff must prove to establish a claim of age discrimination in employment under the LAD. Under New Jersey law, "an employee must 'show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process.'"  Bergen Commercial Bank v. Sisler, 157 N.J. 188, 207 (1999) (quoting Maiorino v. Schering-Plough Corp., 302 N.J. Super. 323, 344 (App. Div.) (quoting Miller v. CIGNA Corp., 47 F.3d 586, 597 (3d Cir. 1995)), certif. denied, 152 N.J. 189 (1997)).

"Although the discrimination must be intentional, an employee may attempt to prove employment discrimination by using either direct or circumstantial evidence."  Id. at 208 (internal citation omitted); see O'Brien v. Telcordia Technologies, Inc., 420 N.J. Super. 256, 262 (App. Div. 2011) (noting that a "plaintiff must present either circumstantial or direct evidence of age discrimination").  Pursuant to Gross, "the burden of persuasion necessary to establish employer liability is the same in alleged mixed-motives cases as in any other ADEA disparate-treatment action.  A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision."  557 U.S. at 177-78, 129 S. Ct. at 2351, 174 L. Ed. 2d at 129.  And as previously noted, the showing required is that "the plaintiff's age must have 'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome.'"  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 141, 120 S. Ct. 2097, 2105, 147 L. Ed. 2d 105, 116 (2000) (quoting Hazen Paper Co., supra, 507 U.S. at 610, 113 S. Ct. at 1706, 123 L. Ed. 2d at 347); accord Gross, supra, 557 U.S. at 177-78, 129 S. Ct. at 2351, 174 L. Ed. 2d at 129 (citing Reeves).

The Court's decision in <u>Gross</u> raises a separate issue about proof of age discrimination claims that is not implicated in this case.  In <u>Gross</u>, based on differences in the language Congress used in the ADEA and Title VII, the Court held that the shift in burden of persuasion to the defendant in a mixed-motive discrimination case under Title VII of the Civil Rights Act of 1964 described in <u>Price Waterhouse v. Hopkins</u>, 490 <u>U.S.</u> 228, 109 <u>S. Ct.</u> 1775, 104 <u>L. Ed.</u> 2d 268 (1989), has no application in an ADEA case.  There is no reason for us to consider whether our courts should or would follow that aspect of <u>Gross</u> in addressing age discrimination claims under the LAD because the trial court did not give this jury an instruction on the shifting burden of persuasion.  As we did in <u>O'Brien v. Telecordia Technologies, Inc.</u>, we leave that "thorny" question for a case in which it is necessary to decide it.  420 <u>N.J. Super.</u> at 270; <u>see</u> <u>McDevitt v. Bill Good Builders, Inc.</u>, 175 <u>N.J.</u> 519 (2003) (discussing <u>Price Waterhouse</u> in a case with a claim based on the ADEA).

It is worth noting, however, that the Court's decision in <u>Gross</u> casts no significant doubt on the applicability of the burden of production framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 <u>U.S.</u> 792, 93 <u>S. Ct.</u> 1817, 36 <u>L. Ed.</u> 2d 668 (1973), to claims of age discrimination under the LAD.  Defendants do not argue otherwise.  In <u>Gross</u>, the Court consistently and

11

unambiguously disapproved a shift of the "burden of persuasion."
See Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009)
(concluding that its prior decisions applying the McDonnell
Douglas framework, which shifts only the burden of production,
to ADEA claims were not irreconcilable with Gross and following
its precedent).  Our courts have applied the McDonnell Douglas
framework to age discrimination claims under the ADEA and the
LAD.  McDevitt, supra, 175 N.J. at 523 (ADEA); Sisler, supra,
157 N.J. at 209-13 (LAD).  The Court recently stated, "All LAD
claims are evaluated in accordance with the United States
Supreme Court's burden-shifting mechanism."  Battaglia v. United
Parcel Serv., Inc., 214 N.J. 518, 546 (2013) (citing McDonnell
Douglas, supra, 411 U.S. at 802-04, 93 S. Ct. at 1824-25, 36 L.
Ed. 2d at 677-79).

Based on the foregoing, we conclude that Gross has no
impact on our review of the adequacy of evidence supporting the
jury's verdict in favor of Klein.

C.

Defendants also claim that Klein is not entitled to damages
because, as an "at will" employee, he had no expectation of
continued employment.  That claim has insufficient merit to
warrant any discussion beyond the brief remarks that follow.  R.
2:11-3(e)(1)(E).  The LAD prohibits an employer from basing "any

employment decisions on discriminatory reasons." <u>Nini v. Mercer Cnty. Cmty. Coll.</u>, 202 <u>N.J.</u> 98, 107 (2010). "'[T]he overarching goal' of the LAD, reflecting the clear public policy of this State, '"is nothing less than the eradication 'of the cancer of discrimination'"'" in the workplace." <u>Sisler</u>, <u>supra</u>, 157 <u>N.J.</u> at 199 (quoting <u>Fuchilla v. Layman</u>, 109 <u>N.J.</u> 319, 334 (quoting <u>Jackson v. Concord Co.</u>, 54 <u>N.J.</u> 113, 124 (1969)), <u>cert. denied</u>, 488 <u>U.S.</u> 826, 109 <u>S. Ct.</u> 75, 102 <u>L. Ed.</u> 2d 51 (1988)). It provides a remedy for violation of civil rights that is independent of private or public contract. <u>Ibid.</u> Accordingly, relief is not dependent upon a contractual right or any expectation other than freedom from unlawful discrimination.

Having addressed these foregoing preliminary legal questions, we turn to address the evidence.

II

This controversy was born of a budget crisis. In 2007, the Freeholders for Passaic County informed the sheriff that the PCSD budget would be cut significantly. Although the projected reduction in PCSD's budget varied between the initial disclosure and the development of PCSD's plan to address it, cuts as high as thirty percent — $20 to $12 million of a $70,000,000 budget — were forecast. Because ninety percent of the PCSD's budget was spent on personnel, the PCSD considered a reduction in force.

13

The sheriff assigned Charles Myers, Director of Administration, to develop and implement a plan. Myers explained that he had no "selection criteria" for identifying sheriff's investigators for removal but that his recommendations were "[m]ore or less based on the staffing needs of the agency and the need to cut a certain amount from the budget." In his words, "[i]t was a constant balancing act between what do we need, what can we cut, and where are we at with the number at this point." Myers did not recall why Garnes and Klein were on the list of investigators whose service would be terminated while others in the same position were not, but he did recall that seniority played no role in his decision and that the need to "meet a certain number" — the amount that had to be cut and the minimum staffing levels required — did play a role. Myers, however, did not know what Klein's assignment as a sheriff's investigator was. Further, he explained that the duties a particular sheriff's investigator was then performing "[b]ore no relevance to the layoffs." He looked at the cost of having the investigator work — a matter of salary, pension and social security contributions.

Using Garnes as an example, Myers explained: "I don't recall how we may have selected him out [of] the group of 25 other investigators. But that's just what worked. The final

14                                                      A-2186-12T3

list was the final list." Myers also recalled that the first investigator he placed on the removal list was his stepson, a man much younger than Garnes and Klein.[3]

At trial, Myers testified that he did a staffing levels study that consisted of identifying the number of officers or investigators needed in the corrections positions and court positions. In addition, he made decisions about sheriff's investigators based on N.J.S.A. 40A:9-117a, which limits the number of appointments to those unclassified positions to no more than fifteen percent of the total number of officers employed. According to Meyers, to meet the statutory limit and the overall reduction in personnel costs, eight investigators had to be removed.

Myers explained that the reduction in staff was necessitated by the cuts to the PCSD's budget and done for the purposes of efficiency and economy. He noted that there was an additional cost savings when sheriff's investigators, as opposed to sheriff's officers, were removed. Myers explained that because the investigators serve at the pleasure of the sheriff and do not have civil service protections enjoyed by other officers, they can be laid off more promptly than their

_____

[3] Myers disclosed the information in the text during his deposition, and plaintiffs' attorney presented selected portions of the deposition transcript as part of plaintiffs' case.

colleagues who have civil service protection and must be laid off in conformity with a civil process that can take as long as ninety days. For that reason, the PCSD discontinued the service of sheriff's investigators so that its budget could be reduced by the cost of keeping the employee as early as January 1, 2008.

Although the sheriff had met with his investigators and warned of the budget cut and the staff reductions earlier, formal notice was first sent to Klein and Garnes on December 10, 2007. The notices were given by memo from the sheriff. The memos advised the recipient that for "reasons of economy and efficiency," he would be "separated from duty effective January 1, 2008." The memo did not mention any reemployment opportunities within the PCSD, but it did advise the investigators of their ability to apply for civil service positions in other jurisdictions pursuant to N.J.S.A. 40A:14-180 and offer assistance to them in that endeavor.

Klein and Garnes were two of eight investigators separated from employment effective January 1, 2008. There was no evidence that either of these investigators was tendering substandard or less than quality performance.

Garnes, born in November, was forty-nine years old on January 1, 2008. He had worked as a PCSD sheriff's investigator since his initial appointment in 1990. Among the investigators

employed by the PCSD in December 2007, Garnes was one of the highest paid. According to information provided by the PCSD listing base salary and total earnings as of September 28, 2007, Garnes's salary was $79,568 and with longevity and a stipend for education he had been paid $89,025. Garnes did not claim to have earned less. Indeed, at trial he testified that his earnings in 2006 and 2007 respectively, were $101,331.45 and $94,584.95.

Klein was older than Garnes, and his earnings were lower. Klein, appointed in December 2003, was fifty-seven years old by January 1, 2008. His base salary was $60,561 in 2007, and the PCSD records do not reflect that he had any additional earnings as of September 28, 2007.

The ages and salaries of the other six investigators whose service was discontinued effective January 1, 2008 were as follows[4]: a fifty-nine year old with a base salary of $79,568; a twenty-seven year old with a base salary of $46,739 and earnings of $52,913; a thirty-six year old with a base salary of $46,739; a thirty-six year old with a base salary of $46,739 and earnings of $48,239; a twenty-six year old with a base salary of $66,284

---

[4] In stating the age of these investigators we have been less than precise, in that we have used the age each would be as of December 31, 2008. The earnings stated are based on information provided by the PCSD that purports to state earnings as of September 28, 2007.

and total earnings of $69,817; and a twenty-five year old with a base salary of $46,739.

At trial, defendants relied upon the mixed ages of this group of eight investigators and their asserted purposes of efficiency and economy to defeat Garnes' and Klein's allegations of age discrimination.  The jurors determined that Garnes, who was ten years younger than and paid more than the eldest investigator discharged who had the same base salary, failed to prove that he was terminated because of his age.  As previously noted, Garnes did not appeal.

The jurors reached a different conclusion with respect to Klein.  Klein was several years older than Garnes — fifty-seven — and earned less than Garnes — $60,561.  The only investigator working at the time older than Klein was the fifty-nine year old whose base salary was $79,568 and whose service was discontinued with Klein's, effective January 1, 2008.

Several investigators younger than Klein and with base salaries and earnings as high or higher than his on September 28, 2007, continued their employment as investigators beyond January 1, 2008.  Identified by the age they would reach by December 2008 and stating their earnings as of September 28, 2007, they include: a thirty-six year old earning $60,561, whose employment was discontinued in December 2010; a thirty-one year

old earning $89,116, whose employment was discontinued in March 2009; a forty-nine year old earning $92,208, whose employment was discontinued in March 2008; a thirty-six year old earning $84,342, whose employment was discontinued in March 2008; a forty-three year old earning $66,264, whose employment was discontinued in March 2008; a forty-six year old earning $66,264, whose employment was discontinued in April 2010; and a forty-six year old earning $72,890, whose employment was discontinued in March 2008.

In addition, several younger sheriff's investigators with base salaries as high or higher than Klein's were still employed as sheriff's investigators in the PCSD at the time of trial, which was in May 2012. They include[5]: a thirty-eight year old investigator in 2008 earning $88,229; a twenty-eight year old in 2008 earning $60,561; a thirty-nine year old in 2008 earning $72,890; a thirty-nine year old in 2008 earning $62,061; and a thirty-three year old in 2008 earning $72,890.

In addition to the foregoing, there is evidence that numerous sheriff's investigators, all of them younger than Klein, were hired from January 1, 2008 through December 23,

---

[5] Once again, in stating the age of these investigators we have been less than precise, in that we have used the age each would be as of December 31, 2008. The earnings stated are based on information provided by the PCSD that purports to state earnings as of September 28, 2007.

2009. During that period, eleven sheriff's investigators who were younger than Klein was on January 1, 2008 were appointed as sheriff's investigators.

Neither plaintiff presented any direct evidence of discrimination based on age.

As previously noted, to establish a claim of age discrimination in employment under the LAD, "an employee must 'show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process.'" Sisler, supra, 157 N.J. at 207 (quoting Maiorino, supra, 302 N.J. Super. at 344 (quoting Miller, supra, 47 F.3d at 597)). Proof by a preponderance of the evidence is required. Id. at 210.

Where, as here, a claim of age discrimination is supported only by circumstantial evidence, the evidence is assessed under the McDonnell Douglas framework. Id. at 209. If the plaintiff establishes a prima facie case, a presumption of unlawful discrimination arises. Id. at 210. The employer may obliterate that presumption "with admissible evidence of a legitimate, non-discriminatory reason" for taking the employment action at issue. Ibid. At that point, the employee has an opportunity to prove that the employer's asserted reason for the action is not

true and is merely a pretext for discriminating among employees on an impermissible basis.  Id. at 211.

The elements of a LAD plaintiff's prima facie case vary depending upon the discrimination alleged and the employment action taken.  The McDonnell Douglas framework as stated by our Supreme Court in Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 492 (1982), a case involving discriminatory hiring, is as follows:

> The plaintiff must demonstrate by a preponderance of the evidence that he or she (1) belongs to a protected class, (2) applied and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications. 411 U.S. at 802, 93 S. Ct. at 1824, 36 L. Ed. 2d at 677 (footnote omitted).

Modification to address the circumstances of the particular case is obviously required.  Thus, where the plaintiff complains of a discharge, evidence of qualification and discharge suffices to establish the third element.  Sisler, supra, 157 N.J. at 212. And evidence of replacement efforts may substitute for evidence of continued efforts to fill a vacant position.  Erickson v. Marsh & McLennan Co., 117 N.J. 539, 551 (1990).  Similarly, where the allegation is discrimination based on age under the LAD, which, unlike the ADEA that protects only those over forty, does not limit the protection to persons who have reached a

21

certain age, evidence of membership in a specified age group is not required. See Sisler, supra, 157 N.J. at 212-14 (noting the need for refocusing the first and fourth elements that hinge respectively on membership and non-membership in a protected class). Instead, the third and fourth elements can be shown by evidence giving rise to an inference that an older employee has been treated less favorably than his or her younger counterparts. Sisler, supra, 157 N.J. at 212-13, 217-18.

In the context of an age discrimination claim based on a reduction in force, the Third Circuit described the prima facie case as follows: "To establish a prima facie case under the McDonnell Douglas/Burdine pretext framework in a RIF case, the plaintiff must show he was in the protected class, he was qualified, he was laid off and other unprotected workers were retained." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). Adapting that case to account for the fact that the LAD does not identify a protected age group, we conclude that Klein, a fifty-seven year old and of an age sufficient to warrant an inference that his age was relevant, had to show that he was laid off while other younger employees earning as much or more than he were carried. See Murray v. Newark Hous. Auth., 311 N.J. Super. 163, 172-74 (Law Div. 1998) (restating the prima facie case articulated in Armbruster). Judge Payne's reasoning

in Murray was cited with approval by our Supreme Court in Sisler. 157 N.J. at 201, 210, 211, 217.

In this regard, it is important to note that the reasons the employer offers for selections of employees to be among those let go in a reduction in force are pertinent to an evaluation of the plaintiff's proofs of age discrimination in that context. "An employee may meet this burden either by persuading the court 'directly "that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."'" Sisler, supra, 157 N.J. at 211 (quoting Murray, supra, 311 N.J. Super. at 173 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207, 217 (1981))).

Klein clearly made the essential prima facie showing and overcame the evidence defendants offered to prove that Klein was selected to be among the investigators terminated for reasons of economy and efficiency. The evidence showing that younger and higher paid investigators who also served at will were retained gave rise to a reasonable inference that the reasons the PCSD asserted for terminating him were simply a pretext for the employer's preference to retain younger investigators. There is no question that defendants established a budget crisis

requiring terminations, but they did not establish a justification for addressing that budget crisis by leaving investigators who were younger and higher paid on the job while terminating Klein who was older and paid less.

Accepting "as true all evidence supporting" Klein's claim and according him "the benefit of all legitimate inferences which can be deduced [from the evidence]," we cannot conclude that defendants were entitled to a judgment notwithstanding the verdict. Besler v. Bd. of Educ. of W. Windsor-Plainsboro Reg'l Sch. Dist., 201 N.J. 544, 572 (2010). Accordingly, we affirm.

### III

A trial judge's fee determinations are "disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995). We have considered the record and the findings and reasons for the award the judge placed on the record on September 14, 2012, in light of that deferential standard of review. In the end, we have determined that no argument defendants raise to establish that this award is excessive has sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24                                                    A-2186-12T3