**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3168-22

SHARON GOMEZ,

     Plaintiff-Appellant,

v.

INTERTEK TESTING SERVICES,
NA, INC., INTERTEK USA, INC.,
CASSARENA KOPACZ, and
JOE KEATING,

     Defendants-Respondents.

_____

Submitted September 10, 2024 – Decided October 3, 2024

Before Judges Sumners and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7928-20.

Goldman Davis Krumholz & Dillon, P.C., attorneys for appellant (Paula M. Dillon, of counsel; Kelly A. Smith, on the briefs).

Lewis Brisbois Bisgaard & Smith LLP, attorneys for respondents (Elior D. Shiloh, Michael D. Thompson, and Brent A. Bouma, of counsel and on the brief).

PER CURIAM

Plaintiff Sharon Gomez appeals from the May 11, 2023 Law Division order, which granted defendants Intertek Testing Services, NA, Inc., Intertek USA, Inc., Cassarena Kopacz, and Joe Keating summary judgment and dismissed plaintiff's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, claims. We affirm.

I.

We view the following facts established in the summary judgment record in a light most favorable to plaintiff, the non-moving party. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023). Intertek is a global corporation that performs testing and inspection services throughout the United States. From 2003 to 2004, Intertek employed plaintiff at its Carteret branch location in the administrative billing department. In 2012, plaintiff returned to Intertek as an operations coordinator. She briefly left Intertek in 2014 fearing rumored layoffs. After two months, she returned to Intertek until her termination in 2020. As one of two operations coordinators, Intertek tasked plaintiff with "provid[ing] the best service possible for petroleum clients," which included "laboratory work, reporting, speak[ing] with field personnel . . . , perform[ing] final documentation," and sometimes marketing. She regularly communicated

with Intertek clients and field technicians but did not do field work. Plaintiff shared work responsibilities with Carteret branch operations coordinator, David Palkowetz, who Intertek employed since 1998.

Kopacz managed Intertek's Carteret, New Haven, and Albany branches. Intertek authorized Kopacz to hire, promote, and make termination recommendations for the employees she managed.

Beginning in late January 2020, defendant Keating, as senior vice president of Intertek's sister company Intertek Testing Services [ITS], Canada Limited, undertook "regional discussions" concerning headcount reductions in Intertek's Carteret, Pennsylvania, and Virginia branches due to poor performance causing financial strain. Keating frequently held meetings with Kopacz to discuss improvement plans and also with Frank Bilski, the regional human resources manager, to discuss business and personnel needs. Kopacz proposed a new hybrid position, titled operations supervisor, seeking to employ an existing field inspector to address quality management. The job responsibilities included handling certifications, training new inspectors, and occasionally going into the field. Kopacz offered field inspector Calixto Torres the position; however, Torres's transition into the position was suspended until September 2020 due to the onset of the COVID-19 pandemic in March.

A-3168-22

In April, due to the ongoing negative financial effects of the pandemic, Intertek implemented multiple cost-cutting measures, including employee salary reductions, decreased hours, and furloughs. On April 8, Intertek informed plaintiff that due to a "temporary shortage of work in areas of [the] business," her salary would "be reduced" by approximately twenty-two thousand dollars a year effective April 12. Intertek also furloughed six full-time employees, terminated one employee, and cut part-time employee hours.

In August, Intertek informed Keating, Kopacz, and Bilski that a reduction in force (RIF) was required. Per the directive, defendants implemented the RIF using a "last in, first out method" (LIFO) based on years of service. Kopacz did not conduct or evaluate previous performance reviews when applying the LIFO policy to select employees for the RIF.

On September 9, Kopacz and Bilski informed plaintiff of her termination, effective September 11, and explained that one operations coordinator position was being eliminated. Kopacz certified Intertek chose plaintiff because she was the operations coordinator with less employment time. Plaintiff's responsibilities were then "distributed among the remaining members of the team," including Torres, Kopacz, and Palkowetz. Intertek also terminated two

4

other Carteret employees, an administrative assistant and a field inspector, along with fifty-three male employees and eight female employees nationally.

On September 13, Torres assumed his new official job title of operations supervisor. On July 30, Intertek hired Preston Smith as a business development manager at the Carteret location. Smith's "position was meant to positively impact the business of the Northeast Region by pursuing new clients and revenue streams, developing new markets, and addressing operational issues negatively impacting clients." Smith's salary was from regional overhead funds rather than the Carteret branch. On October 22, Intertek additionally hired Eddison Reyes to fill an operations manager position, beginning in November. Kopacz supported Carteret's hiring of Reyes, reasoning the branch was "looking to address the loss in revenue" and therefore needed to hire "an experienced operations manager who would come with . . . a roster of clients."

On November 13, plaintiff filed a two-count complaint alleging gender discrimination and aiding and abetting in violation of the LAD. Plaintiff thereafter amended the complaint, adding a LAD retaliation claim.[1] On March 17, 2023, defendants moved for summary judgment.

---

[1] Plaintiff is not appealing the dismissal of her retaliation claim.

A-3168-22

Following oral argument, the court issued an order accompanied by an oral statement of reasons granting defendants' motion and dismissing plaintiff's complaint. Affording plaintiff all reasonable inferences of fact, the court found a prima facie showing "she was the victim of unlawful discrimination" but concluded plaintiff failed to show defendants' provided legitimate, non-discriminatory reasons for termination were pretextual. Specifically, the court found plaintiff demonstrated no material facts showing Intertek's reasons for hiring Smith and Reyes were pretextual. The court reasoned businesses "often have to spend money to increase revenue," which sometimes results in termination of "competent long-term employees who do not bring in any business." It further recognized plaintiff "had not demonstrated the skills to bring in business and did not have a roster of clients." The court noted plaintiff offered no reliable evidence she was qualified for the operations supervisor position, noting "her lack of field experience." Further, plaintiff provided no facts rebutting "the efforts of the Intertek defendants to consider termination as a last resort," which was evidenced by its "utilizing reduced pay for existing . . . employees and furloughs."

The court additionally found plaintiff's aiding and abetting claims failed, as the LAD claim against Intertek was without merit. The court noted nothing

6

in the record demonstrated Intertek "did anything inappropriate under the law regarding the RIF" or "gender discrimination." Thus, the court held, "[i]n light of that fact[,] I am granting summary judgment as to the individual defendants" Kopacz and Keating.

On appeal, plaintiff argues the court erroneously granted summary judgment after finding she failed to establish material issues of fact demonstrating pretext and aiding and abetting by Keating and Kopacz.

## II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). To rule on summary judgment, courts must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46

A-3168-22

(2007)).  Our review entails determining "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  C.V. ex rel C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (internal quotation marks omitted)).

"Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment."  Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alterations in original) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529).  "Summary judgment should be granted 'if the discovery and any affidavits show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  DeSimone, 256 N.J. at 180-81 (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 405 (2013)) (internal quotation marks omitted).  Insubstantial arguments based on assumptions or speculation are not enough to overcome summary judgment.  Brill, 142 N.J. at 529; see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019).

The LAD's remedial "purpose is nothing less than the eradication of the cancer of discrimination." C.V., 255 N.J. at 306-07 (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993)) (internal quotation marks omitted). It prohibits unlawful employment practices and discrimination "based on race, religion, sex, or other protected status[] that creates a hostile work environment." Cutler v. Dorn, 196 N.J. 419, 430 (2008); see also N.J.S.A. 10:5-12(a). "There is no single prima facie case that applies to all employment discrimination claims. Instead, the elements of the prima facie claim vary depending upon the particular cause of action." Victor v. State, 203 N.J. 383, 408 (2010).

To establish a prima facie case of wrongful termination based on gender discrimination, a plaintiff must prove he or she: (1) was in a protected class; (2) was performing the job at a level that met the employer's legitimate expectations; (3) was nevertheless discharged; and (4) discharged under circumstances giving rise to an inference of discrimination. Young v. Hobart W. Grp., 385 N.J. Super. 448, 463 (App. Div. 2005). With respect to an alleged RIF, "a plaintiff whose position was eliminated need not show that he or she was replaced[] but must show that the employer retained someone outside the protected class" to perform a job that he or she could perform. Baker v. Nat'l

State Bank, 312 N.J. Super. 268, 289 (App. Div. 1998); see also Garnes v. Passaic County, 437 N.J. Super. 520, 538-39 (App. Div. 2014).

"Establishment of a prima facie case gives rise to a presumption that the employer unlawfully discriminated against the employee." Meade v. Township of Livingston, 249 N.J. 310, 329 (2021) (quoting Bergen Com. Bank v. Sisler, 157 N.J. 188, 210 (1999)). In analyzing such claims under the LAD, New Jersey adopted the "burden-shifting methodology" set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 729, 802-04 (1973). See id. at 328. Under this burden-shifting analysis:

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant must then show a legitimate nondiscriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.
>
> [Ibid. (quoting Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 331 (2010)).]

"The employer may obliterate that presumption 'with admissible evidence of a legitimate, non[]discriminatory reason' for taking the employment action at issue." Garnes, 437 N.J. Super. at 537 (quoting Bergen Com. Bank, 157 N.J. at 210). "At that point, the employee has an opportunity to prove that the employer's asserted reason for the action is not true and is merely a pretext

10

for discriminating among employees on an impermissible basis." Ibid. (citing Bergen Com. Bank, 157 N.J. at 211).

III.

Plaintiff made a prima facie showing of gender discrimination as she: belongs to a protected class; sufficiently performed as an operations coordinator with Intertek; was discharged in 2020; and demonstrated discharge circumstances that support inferences of gender discrimination, including Intertek's hiring of male employees after her termination. We therefore consider, under McDonnell's burden-shifting analysis, Intertek's nondiscriminatory reasons for discharging plaintiff as an operations coordinator and whether she has demonstrated material issues of fact supporting pretext for gender discrimination, respectively.

Plaintiff contends that in granting Intertek summary judgment on her LAD gender discrimination claim, the court erroneously failed to consider the factual inferences rebutting Intertek's reasons for termination. Intertek substantiated legitimate non-discriminatory reasons for its RIF, which included the necessity to eliminate one of the operations coordinator positions for financial reasons and plaintiff's termination occurring under its branch-wide LIFO policy. Plaintiff specifically challenges Intertek's RIF decision and "the legitimacy of her

A-3168-22

selection for the RIF," arguing defendants improperly utilized LIFO methodology by not utilizing objective or performance-related criteria. She argues favorable inferences regarding her seniority at Intertek, qualifications in the petroleum industry, and the fact Intertek favored male employees establishes that Intertek's discharge reasons are pretext for its "discriminatory motive." We are unpersuaded.

Plaintiff failed to factually refute Intertek implemented the 2020 RIF based on its financial difficulties, compounded by the COVID-19 pandemic. Keating's uncontroverted testimony established Intertek's legitimate financial considerations for terminations. He explained Intertek issued a directive requiring an RIF throughout the company's branches due to "the massive [business] losses." Plaintiff's argument that the RIF was invalid because Keating failed to provide specific financial goals is without merit; Keating testified the goals of the RIF were "ongoing" and "very fluid[,] so it would be a moving target." Keating clarified, "[i]t's a combination of revenue and cost," and "headcount reductions" translate to "savings." Further, Bilski corroborated that "look[ing] at the different job titles" and then deciding "what job titles to eliminate" based on business needs and seniority determined layoffs. Kopacz certified the decision to eliminate one of the two operations coordinators was

12

based on the high salary level and ability to still satisfy the business needs. It is also undisputed that prior to terminations, Intertek tried to address its financial situation through pay cuts, reduction in hours, and furloughs.

We note plaintiff acknowledged Intertek's Carteret branch was financially strained and experiencing losses well before 2020. In fact, in 2014, plaintiff resigned due to her concerns over Intertek's financial stability as "they were laying people off," and she was concerned about her retention. Further, she does not dispute the COVID-19 pandemic shutdowns had a substantial, detrimental effect on the petroleum industry and Intertek. The record amply supports the court's determination that Intertek established a legitimate basis for the RIF.

Plaintiff also failed to demonstrate material issues of fact supporting her argument that Intertek's LIFO RIF criteria was pretextual. Bilski testified "business needs . . . first and foremost" and seniority determined layoffs. Further, Bilski's certification established Intertek previously used the LIFO policy, establishing policy consistency. Notably, plaintiff fails to cite, and our research has not revealed, binding authority requiring an RIF to be conducted based on performance-related criteria. Thus, plaintiff failed to establish material issues of fact supporting that Intertek's LIFO RIF criteria was illegitimate and pretext for gender discrimination against her.

A-3168-22

We also reject plaintiff's contention that she demonstrated pretext because Intertek did not follow the workforce reduction LIFO policy with Torres. Plaintiff avers Torres should have been discharged because he had fewer years of service. Intertek hired Torres for the position of operations supervisor, while plaintiff held the position of operations coordinator. Intertek established that the LIFO termination policy was applied to employees working in the same titled position after a position was eliminated under the RIF. Because Torres was in a different titled position, no inference demonstrating pretext is established.

Further, plaintiff's argument that pretext is demonstrated because Kopacz did not offer her the operations supervisor position also fails. The record establishes the operations position required field experience. Specifically, Kopacz testified plaintiff would have required six to twelve months of field training to be qualified for the supervisor position. The record reflects Intertek made the decision to promote Torres because of his field experience in March 2020, before the onset of the COVID-19 pandemic. Intertek thereafter put Torres's promotion on hold due to the pandemic and consequently furloughed him. Additionally, the salary for the position was less than what plaintiff was earning. Plaintiff's assertion that material issues of fact exist demonstrating she

14

"possessed the skill" to be operations supervisor is belied by the record as she conceded to not having field experience.

We next address plaintiff's argument that she demonstrated an inference of pretext because Intertek treated Palkowetz, a man in the same operations coordinator position plaintiff held, more favorably. Palkowetz retained his position as an operations coordinator in the Carteret branch because he began working at Intertek in 1998 and had more years of service than plaintiff. Under Intertek's LIFO policy, Palkowetz retained the position because he irrefutably had seniority. Plaintiff's additional argument that she was the only female operations coordinator at the Carteret branch with over fifteen years of experience is also unavailing, as these facts do not establish a prima facie showing that Intertek's legitimate reasons were pretext for gender discrimination.

Plaintiff's contention that she established pretext because Intertek improperly "hired numerous men to fill positions within the company" following her termination is also without merit. The record demonstrates Intertek filled each position to address client development and increase company revenue. Plaintiff offered no competent evidence supporting her qualification for the two revenue generating positions filled by Reyes and Smith. Cf. Garnes, 437 N.J.

Super. at 539 (holding that where members outside of the protected class are subsequently hired, retained, or promoted following an RIF, the employer must "establish a justification" for employing those members while terminating members within the protected class). Bilski's and Kopacz's uncontroverted testimony was each position was revenue-generating and Intertek sought to address the financial strain suffered. There is no material dispute regarding Intertek's decision to hire specifically qualified employees to increase their revenue, and plaintiff was not "similarly situated." Jason v. Showboat Hotel & Casino, 329 N.J. Super. 295, 305 (App. Div. 2000) (defining "similarly situated" as "possessing equivalent qualifications and working in the same job category as plaintiff" (quoting Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 84-85 (1978))).

The court correctly found no material issues of fact demonstrating "defendants' reasons for terminating [plaintiff's] position were not legitimate and not discriminatory" business reasons. Plaintiff failed to establish a prima facie showing of pretext; therefore, we discern no reasons to disturb the court's comprehensive oral decision granting summary judgment in favor of defendants.

IV.

Lastly, we turn to the dismissal of plaintiff's aid and abetting claims against Kopacz and Keating. N.J.S.A. 10:5-12(a) prohibits unlawful discrimination only by an "employer." An individual employee or supervisor is not considered an employer under the LAD definitions. Tarr v. Ciasulli, 181 N.J. 70, 83 (2004). However, N.J.S.A. 10:5-12(e) makes "it . . . unlawful '[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD],' and such conduct may result in personal liability." Ibid. (second and fourth alterations in original) (citation omitted) (quoting N.J.S.A. 10:5-12(e)). An employee may be liable as an aider or abettor if a plaintiff establishes:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.
>
> [Id. at 84 (alteration in original) (quoting Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).]

Aiding and abetting liability requires "active and purposeful conduct." Ibid.

Plaintiff has not established a prima facie showing that Kopacz and Keating committed wrongful acts aiding Intertek. As we have concluded

17

dismissal of the gender discrimination claim against Intertek was warranted, we need not further address plaintiff's LAD claim for individual liability against Kopacz and Keating for aiding and abetting. See ibid. It is clear neither Kopacz nor Keating have been shown to have participated in a tortious activity, as plaintiff's termination was lawful under the LAD.

To the extent that we have not addressed plaintiff's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3168-22