285 N.J. Super. 422 (1995)
667 A.2d 355
DOLORES KELLY, PLAINTIFF-APPELLANT,
v.
BALLY'S GRAND, INC. T/A BALLY'S GRAND HOTEL/CASINO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 1995.
Decided November 20, 1995.
*424 Before Judges SHEBELL, WALLACE and NEWMAN.
Richard L. Press argued the cause for appellant (Press & Long, attorneys; Mr. Press, on the brief).
David W. Garland argued the cause for respondent (Grotta, Glassman & Hoffman, attorneys; Mr. Garland, of counsel; Mr. Garland and Michael T. Bissinger, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
On March 12, 1993, plaintiff, Dolores Kelly, filed a complaint in the Law Division against her employer, defendant, Bally's Grand, Inc. (Bally). The first count alleged three age discrimination claims: (1) Defendant failed to promote plaintiff in July 1992 to the position of Reservations Manager; (2) Ongoing age discrimination by plaintiff's supervisor, with the intent to force plaintiff from her employment; and (3) Unlawful retaliation against plaintiff for asserting an age discrimination claim. The Second Count alleged a breach of implied employment contract, later voluntarily dismissed by plaintiff. Bally filed its answer on May 18, 1993, denying plaintiff's allegations in their entirety. The parties engaged in discovery, which included numerous interrogatories, depositions, and documents, including witness certifications.
*425 In June 1994, Bally moved for summary judgment on the claims of age discrimination. Following oral argument on August 29, 1994, the Law Division judge granted summary judgment. Plaintiff filed the within appeal, urging error in the granting of summary judgment. We reverse in part and affirm in part.
Plaintiff was hired by the Golden Nugget Hotel Casino in 1983 as a Reservations Agent. In 1986 she was promoted to Reservations Supervisor. In 1987 Golden Nugget was taken over by Bally. Plaintiff continued in her position as Reservations Supervisor, a position she presently holds.
In January 1992, plaintiff's superior, the Reservations Manager, Colleen Farrell, left her position to go on maternity leave. The Reservations Manager reviewed the position with plaintiff prior to leaving and recommended that plaintiff apply for the Reservations Manager position. According to the Reservations Manager's affidavit, the directors of the hotel, Mr. Perez and Mr. Kinee, knew that plaintiff became the acting Reservations Manager. Plaintiff remained acting Reservations Manager for seven months, from January 1992 to July 1992.
In April 1992, a job bid notice for Reservations Manager was posted for employees of Bally. The minimum qualifications included two to four years experience in reservations. According to defendant's job-posting policy, all in-house employees who apply for a position must be notified of the outcome of their application. If no in-house candidates are identified, and the hiring department wishes to recruit from outside, it is required that a written request for advertising be sent to the Director of Personnel. Bally expressed its policy on promotion as follows:
It is the policy of Bally's Grand to encourage qualified employees to apply for promotional opportunities and to grant every consideration to qualified in-house candidates first before recruiting from the outside.
The policy also provides that where more than one qualified, in-house candidate has applied, preference should be given to length of service in the department first, and then, if that is the same, to the overall length of company service.
*426 This policy was also espoused by Bally's vice-president of operations, James Kinee, who stated that while he was sure that it was company policy, it was also his policy
to always consider the in-house candidates first. Because I believe that if you promote from within, it makes the other people feel better about working here. If you keep going to the outside to fill positions, then that's not good.
Plaintiff in her deposition testified that she was aware of this policy, and that she prepared and distributed the necessary job bid forms, and gave the paperwork to the secretary of the Hotel Manager, Marvin Perez. According to Perez's secretary, Diana Zucker, plaintiff gave her the application, and she maintained it in a folder. Zucker stated further, that there were two other in-house candidates who applied for the position, but she indicated that neither held the requisite two-four years reservations experience. Zucker states that she gave the files to Perez and that he reviewed them with Kinee. Zucker then set up interviews for Perez with the candidates, including plaintiff. Zucker was actually at her desk outside of Perez's office, when plaintiff came in for the interview.
Perez, who is no longer employed by Bally, states in his certification that he received plaintiff's job application, and interviewed all of the in-house candidates, including plaintiff. After the interviews, he scheduled a meeting with Kinee, who was to make the final hiring decision. Perez states that he brought all of the applications, including plaintiff's, to Kinee's office, and, during a meeting in late June, 1992, spoke to him regarding all three candidates. Zucker also verifies that she was aware of a meeting between Kinee and Perez in June, 1992, and that she handed Perez the file, which included plaintiff's application and other forms, and that he took the file and walked toward Kinee's office. Perez maintains that Kinee and he spoke about the fact that plaintiff had applied for the position and that she had been serving as acting Reservations Manager. Zucker further verifies that Perez, upon returning from the meeting, told her that he and Kinee had spoken about all three candidates, including plaintiff.
*427 In contrast, Kinee states that he can only recall speaking to Perez about one applicant, Sue Stevens. Kinee states that he rejected Perez's recommendation of Stevens because she lacked reservations experience. Kinee cannot recall if Perez showed him any paperwork, but states with certainty that Perez did not show him any paperwork regarding plaintiff. Kinee contends that he suggested they look outside, as he preferred an outside candidate because he wanted to upgrade the services in the Reservations Department and improve interaction between Bally's various departments. He asserted that he was not fully satisfied with the department at that time.
In its answers to interrogatories, Bally stated that it had no record that plaintiff formally applied for this position. Kinee, in his deposition, states that he was not aware of plaintiff's application until plaintiff questioned him regarding why she had not been given the promotion, and he told her he was unaware she had applied, and would look into it.
Zucker certifies that she dealt directly with Kinee after Perez left Bally's employ, and that Kinee did go through the Reservations Manager application file, in her presence, which included plaintiff's application. Zucker maintains that Kinee went through the file before making his decision on who was to be hired as the Reservations Manager. She states: "I saw him reviewing the Reservations Manager file, which included Dolores Kelly's paperwork. He told me to hold onto the paperwork."
Kinee testified that as part of his job responsibilities, prior to hiring the new Reservations Manager, he would walk through the entire building several times a day, including the reservations department. He was aware who the former Reservations Manager was before she left, but claims that he did not know who was serving in that capacity between the time she left and the new Reservations Manager was hired. However, according to Lenora Shockley, a former Reservations Supervisor, plaintiff attended all staff and manager meetings, while plaintiff was acting Reservations *428 Manager, and Kinee knew who plaintiff was and that she was the acting Reservations Manager while Farrell was out.
Kinee interviewed several outside candidates for the Reservations Manager position before hiring the 31 year old Elizabeth Cooper for the position. Plaintiff then resumed her former position as Reservations Supervisor. After Cooper took over, some of plaintiff's duties were taken away. Cooper made department changes, did some restructuring, and made work schedule changes. During this time, Bally asserts that it was "downsizing." Four members of the department were terminated, all of whom were younger than plaintiff, and one of whom held the same position as plaintiff.
Plaintiff's job evaluations under Cooper are alleged to be lower than her evaluations under her former supervisor. Plaintiff's merit raises, based upon those evaluations, are alleged to have gone from an average of 5-6% to an average of 3.4% of her salary. According to Lenora Shockley, Cooper made statements that she was trying to get rid of plaintiff, that plaintiff was too old to work for Bally, that she wanted plaintiff to retire, and that she was looking for anything to get plaintiff fired. Shockley also contends that Cooper instructed her that she did not want anyone beyond their 30's working in the department, and that Cooper refused to hire two women Shockley had interviewed for reservationist positions because they were in their mid-forties. It is claimed that Cooper directly commented to plaintiff regarding retirement on at least one occasion.
Plaintiff received at least two written reprimands from Cooper in her personnel file. Cooper also commented that plaintiff was inflexible in her work schedule, partly because, she once noted, plaintiff's schedule had to accommodate for time spent watching her grandchildren. However, after plaintiff filed suit against Bally alleging age discrimination, plaintiff acknowledges that Bally and Cooper have treated her nicely. She states that she and Cooper have a professional relationship  they are civil.
*429 In granting summary judgment against plaintiff on her claim of unlawful age discrimination due to defendant's failure to promote plaintiff and hiring someone significantly younger, the judge reasoned that he could not find facts sufficient to establish a cause of action. The judge was wrong in this conclusion.
New Jersey's Law Against Discrimination (LAD) makes it an unlawful employment practice, or unlawful discrimination:
For an employer, because of the ... age ... of any individual ... to discriminate against such individual in compensation or in terms, conditions or privileges of employment.
[N.J.S.A. 10:5-12(a).]
As in other employment discrimination claims arising under the LAD, a multi-step testing procedure, involving burden shifting, is to be applied to plaintiff's claim that she was passed over for promotion on the basis of her age. See Waldron v. S.L. Industries, Inc., 849 F. Supp. 996, 1000 (D.N.J. 1994).
In Erickson v. Marsh & McLennan, 117 N.J. 539, 550, 569 A.2d 793 (1990), our Supreme Court explained the initial analysis for LAD claims, as follows: plaintiff must demonstrate that he or she: (1) belongs to a protected class; (2) applied and was qualified for the position for which the employer was seeking applicants; (3) was rejected despite adequate qualifications; and (4) after rejection, the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications. Ibid. (quoting Andersen v. Exxon Co., 89 N.J. 483, 492, 446 A.2d 486 (1982)). Of course, these factors provide only a general framework and must be modified where appropriate. Clowes v. Terminix International, Inc., 109 N.J. 575, 597, 538 A.2d 794 (1988).
The federal courts have articulated a specific test with regard to age discrimination, which is helpful in analyzing plaintiff's case:
[T]he plaintiff must prove by a preponderance of evidence that he [or she] was (1) a member of a protected class (here, persons aged forty to seventy), (2) qualified for the position, (3) ... not selected for [the] position, and (4) passed over in favor of a candidate sufficiently younger to permit an inference of age discrimination.
[Waldron v. S.L. Industries, supra, 849 F. Supp. at 1001.]
*430 Once plaintiff has passed the above four part test, and has thereby established a prima facie case, discrimination is presumed on the part of the employer, and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. Ibid; see also McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the employer articulates a legitimate reason for its employment decision, the burden again shifts to the plaintiff to show that the employer's articulated reason was not the true motivating reason, but was merely a pretext to mask the discrimination. Ibid.
Here, it is not disputed that plaintiff established a prima facie case of unlawful age discrimination against Bally. Plaintiff was a member of a protected class, age 64 at the time she applied for promotion, and has provided clear evidence that she applied for the position of Reservations Manager. The certifications of Perez and Zucker support her assertion that she filed a formal written application. Further, plaintiff facially appears to have been qualified for the position. The job posting notice stated a requirement of 2 to 4 years experience in reservations, and she had been working in reservations for over four years, and had actually been performing the duties of Reservations Manager for over 7 months. Nonetheless, plaintiff was rejected for the promotion, despite appearing to be qualified for the position. Lastly, the position was filled by a person who was age 31.
Having thus demonstrated a prima facie case, the burden shifted to Bally, which articulated two facially legitimate reasons for failing to promote plaintiff. The first was Kinee's assertion that he had no knowledge of plaintiff filing any formal application, and he maintains, as Perez recommended someone other than plaintiff, he "never considered her so he could not have considered her age a factor in the decision here, because he never considered her." Second, is the assertion that, unsatisfied with the Reservations Department and its interaction with the rest of the hotel/casino *431 operations, Kinee wanted to look outside for a candidate who could bring changes to the department.
We recently made the following observation as to how to proceed once the employer has come forward with a legitimate non-discriminatory reason.
The legitimacy of [defendant's proffered reasons] is not determinative of whether or not summary judgment was appropriate on plaintiff's [claim.] ... For purposes of our review, we assume that this was a legitimate non-discriminatory reason. Nonetheless, once a defendant has met its burden of production of a legitimate reason for the discharge, the plaintiff is afforded the opportunity to show that a discriminatory intent motivated the defendant's actions, and not the legitimate reason offered by defendant. [Jamison v. Rockaway Tp. Bd. of Educ., 242 N.J. Super. 436, 445, 577 A.2d 177 (App.Div. 1990)]. Plaintiff may do this indirectly, by proving that the proffered reason is a pretext for the retaliation, or directly, by demonstrating that a discriminatory reason more likely than not motivated defendant's action. Id. at 445-47, 577 A.2d 177.
[Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 550, 665 A.2d 1139, 1143 (App.Div. 1995).]
In this context the court in Fuentes v. Peskie, 32 F.3d 759 (3d Cir.1994), stated:
The basic framework ... illustrates that, to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action....
* * * * * * * *
[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons, ..., was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext). [To do so,] the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," ... and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."
[Id. at 764-65 (citations omitted).]
We hold that plaintiff need not provide direct evidence that the employer acted for discriminatory reasons in order to survive *432 summary judgment. She need only point to sufficient evidence to support an inference that the employer did not act for its proffered non-discriminatory reasons. See Josey v. John R. Hollingsworth, Corp., 996 F.2d 632 (3d Cir.1993).
The United States Supreme Court in St. Mary's Honor Center v. Hicks, supra, ___ U.S. at ___, 113 S.Ct. at 2742, 125 L.Ed.2d at 416, articulated the ultimate standard of proof on an employment discrimination claim at trial. Once the prima facie case is set forth, and the legitimate reasons articulated, the presumption of discrimination drops out. Ibid.
The plaintiff then has "the full and fair opportunity to demonstrate," through presentation of [her] own case and through cross-examination of the defendant's witnesses, "that the proffered reason was not the true reason for the employment decision," ... and that [age] was. [She] retains that "ultimate burden of persuading the trier of fact that [she] has been the victim of intentional discrimination."
[Ibid. (citations omitted).]
It is not the holding of St. Mary's, supra, that plaintiff must meet this ultimate burden of persuasion on a summary judgment motion. We conclude that here it was sufficient to overcome summary judgment that plaintiff cast such serious doubt on the veracity of Bally's articulated legitimate reasons as to allow a jury to reasonably conclude that Bally was motivated to act for the discriminatory reason alleged by plaintiff. Romano, supra, 284 N.J. Super. at 550-51, 665 A.2d at 1143; see Brill v. Guardian Life, 142 N.J. 520, 528, 666 A.2d 146, 149-50 (1995).
In the present case, plaintiff has presented a genuine issue as to the veracity of her employer's purported legitimate reasons. Kinee's assertion that he cannot recall whether other names including plaintiff's were mentioned by Perez, and that Bally has no record of plaintiff filing a formal application for the position are suspect. Clearly, the record could support a finding that Kinee saw plaintiff's application, was aware of plaintiff's role as acting Reservations Manager; and discussed plaintiff's application with Perez. Thus, the record indicates that Bally received and knew of plaintiff's application, but did not articulate a reason for failing to promote her as required by Bally's policy.
*433 Plaintiff also established enough of a dispute as to Bally's second articulated reason, as well. The second reason advanced for failing to promote the plaintiff is based on Kinee's belated assertion that he wanted to hire someone from the outside because he was not satisfied with the department. The evidence, again taken in a light most favorable to the plaintiff, establishes that this reason is likewise suspect. As stated, Bally did not comport with its own policies on outside hiring, as it did not provide plaintiff with a reason for passing her over for promotion. Moreover, Bally never articulated in its answers to plaintiff's interrogatories, that there was a desire to hire outside the company because of dissatisfaction with the present department management. It was at his June 1994 deposition, that Kinee asserted for the first time that he was dissatisfied with the department. It strains credulity that a superior unsatisfied with a subordinate department would passively allow the problem to continue without so much as a discussion or letter to the acting manager, or at least finding out who was in charge.
We agree that to ultimately prevail, plaintiff must prove that discriminatory intent motivated her employer, even if all of Bally's proffered reasons have been discredited, as it is not enough merely to discredit the reasons. St. Mary's, supra, ___ U.S. at ___, 113 S.Ct. at 2742, 125 L.Ed.2d at 418. Nonetheless, although the trier of fact is not compelled to find for plaintiff, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Ibid; see E.E.O.C. v. MCI Intern., Inc., 829 F. Supp. 1438, 1451 (D.N.J. 1993). Applying the Brill standard for summary judgment, we conclude that after weighing the evidence relating to the material facts, a genuine issue exists. Brill, supra, 142 N.J. at 533, 537, 666 A.2d at 150, 152-53.
Plaintiff also argues that the judge improperly dismissed that part of her complaint that alleges Bally, through its new *434 Reservations Manager, Elizabeth Cooper, engaged in age discrimination by altering the terms and conditions of her employment. Plaintiff asserts that in fact there is sufficient evidence of age bias and animus directed against plaintiff by her supervisor, Elizabeth Cooper, in violation of the LAD's prohibition of discrimination based upon age to withstand summary judgment. N.J.S.A. 10:5-12(a).
Plaintiff points to the affidavits of Leah Jones that Cooper commented to Jones in August of 1992 that she wanted to "get rid of [plaintiff] and get some young people in here." She couples this with the evidence that her performance evaluations went from excellent under her former manager to merely satisfactory under Cooper, and that because merit raises are directly related to the evaluations, her raises decreased under Cooper.
Plaintiff asserts that the sexual harassment-hostile work environment analyses/case law does not apply to age discrimination. We find no reported case law dealing directly with an ongoing claim of age animus in the workplace in our jurisdiction.
Under a hostile work environment analysis, as modified to fit an age animus claim, plaintiff would have to establish that: (1) the complained of conduct would not have occurred but for her age; (2) the conduct was severe or pervasive; (3) enough to make a reasonable older aged person (64 year old person) believe that; (4) the conditions of employment have been altered and the working environment is hostile or abusive. See Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 603, 626 A.2d 445 (1993).
We are convinced that the evidence of age based statements of bias aimed at plaintiff by her supervisor, together with the evidence of poorer evaluations and written reprimands given by Cooper to plaintiff sufficiently raise an inference of age discrimination under LAD. The consequences of Cooper's alleged bias, whether evaluated in terms of hostile environment or the basis of their direct consequential harm to the plaintiff, are sufficient to permit plaintiff to continue her cause of action. We recognize that *435 Cooper may only be a tougher boss than Farrell; however, she may also treat plaintiff more harshly than the others because of the bias motives alleged to have been expressed against plaintiff. We conclude that plaintiff has made out a prima facie case and it is for her employer to show that Cooper treated plaintiff no differently from her co-workers.
Lastly, the LAD prohibits employers from retaliating against employees for engaging in a protected activity under the act. N.J.S.A. 10:5-12(d). Plaintiff engaged in a protected activity when she pursued her claims of age discrimination. However, plaintiff's own admission, that since she filed the lawsuit Bally and Cooper have not treated her improperly, supports dismissal of her retaliation cause of action.
Any actionable conduct appears to have occurred prior to and not in retaliation for plaintiff's claims of discrimination. Summary judgment was proper under the present test enunciated by our Supreme Court in Brill, supra, which requires a judge ruling on a summary judgment motion to engage in a weighing process to find out if a genuine issue of material fact exists, a process essentially the same as that of a directed verdict. Id., 142 N.J. at 533, 536, 666 A.2d at 150, 152-53, 154. The essential issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. 142 N.J. at 533, 666 A.2d at 153 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986)). We, therefore, affirm the dismissal of plaintiff's retaliation claim.
We reverse the Law Division's dismissal of plaintiff's claim for failure to promote and her claim based on ongoing discrimination. We affirm the granting of summary judgment on plaintiff's claim for retaliation.