**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1675-19T3

JANAK SARKARIA, M.D.,

     Plaintiff-Appellant,

v.

SUMMIT ANESTHESIA
ASSOCIATES, P.A.,

     Defendant-Respondent,

and

OVERLOOK MEDICAL
CENTER,

     Defendant.

_____

Submitted January 4, 2021 – Decided January 22, 2021

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6481-16.

Jean-Marc Zimmerman, attorney for appellant.

Bressler Amery & Ross, P.C., attorneys for respondent (Lauren Fenton-Valdivia and Michael T. Hensley, of counsel and on the brief; Justin E. Condit, on the brief).

PER CURIAM

Plaintiff appeals from two orders: one granting summary judgment in favor of defendant and dismissing plaintiff's breach of contract and punitive damages claims for alleged age discrimination under the New Jersey Law Against Discrimination (LAD); and another granting a directed verdict in favor of defendant on plaintiff's remaining LAD claim. Plaintiff claims that her employer, defendant Summit Anesthesia Associates (SAA), forced her termination based on her age and high salary when Mednax acquired the practice and that defendant used unfounded and unproven allegations that she deviated from the applicable professional standard of care to oust her from the practice. Plaintiff produced no evidence in support of her discrimination case and failed to show that defendant's business reason for termination was pretextual. We therefore affirm.

Plaintiff is a sixty-nine-year-old anesthesiologist who began working at SAA in 1977. SAA employed plaintiff as an attending physician to provide anesthesia services at both Overlook Hospital (Overlook) and other outpatient centers. Plaintiff executed an employment agreement with SAA (the

employment agreement) with an effective date of December 31, 2013, and a term of three years, ending December 31, 2016. Pertinent to this appeal, the employment agreement provided that SAA could terminate plaintiff "in the event [plaintiff] shall have a [d]isability for ninety-one . . . days or more in any one hundred twenty . . . consecutive day period." In January 2014, Mednax, a large national company that acquires medical practices, acquired SAA. Around this time, co-workers began asking plaintiff when she was going to retire, slow down, or take fewer calls.

On October 2, 2015, plaintiff participated in a caesarian section at Overlook and rendered care to a patient after an attending physician found the patient was exhibiting signs of post-partum hemorrhage. Doctors and nurses not affiliated with SAA filed complaints about plaintiff's handling of the patient, characterizing plaintiff's care as "chaotic" and "threatening." Thereafter, Overlook made a request that plaintiff be temporarily removed from the obstetrics (OB) call schedule until an investigation could be completed. SAA kept plaintiff on the regular anesthesiology schedule as a full-time employee.

Plaintiff worked her regular daytime shifts from October 5, 2015 to October 8, 2015. On October 8, 2015, SAA scheduled plaintiff for an OB call shift, which she worked under the supervision of another attending physician

A-1675-19T3

because she was not allowed to take calls without supervision. On October 9, 2015, plaintiff met with Dr. Paris, then-director of SAA, who reiterated that plaintiff was not to take OB calls temporarily. Plaintiff believed this decision was permanent, that she was effectively terminated between October 13 and October 28, 2015, and was therefore only working per diem. Plaintiff's pay and benefits did not change during the time frame that she was temporarily removed from the OB call schedule.

On October 9, 2015, plaintiff left on a pre-planned vacation and returned to Overlook on October 26, 2015 for her scheduled shift. Plaintiff was "nervous and so shaky," "didn't feel comfortable" administering anesthesia, was unable to perform her job, and asked to be relieved from her shift. Plaintiff reported becoming anxious after her removal from the OB call schedule, having panic attacks, and having difficulty sleeping. She began treatment in October 2015 with a psychiatrist, Dr. Syeda Hasan, M.D., who diagnosed her with post-traumatic stress disorder (PTSD).

On October 28, 2015, after completion of all investigations, SAA decided plaintiff would not be terminated and could return to the OB call schedule upon completion of an obstetrics training simulation. Plaintiff said she "was not in any shape [or] form" to participate in the simulation and never did.

Plaintiff did not return to work at SAA after her October 26, 2015 shift. For approximately one year following this date, plaintiff was on short-term disability, long-term disability, and received leave under the Family Medical Leave Act. Plaintiff continued to be a full-time employee of SAA during the time she was on a medical leave of absence from October 26, 2015 until November 7, 2016. SAA contacted plaintiff multiple times to determine when she would be able to rejoin the practice, complete the simulation, and return to the regular anesthesia call schedule. On November 7, 2016, SAA served plaintiff with a letter terminating her employment pursuant to the long-term disability provision of her employment agreement.

On November 4, 2016, plaintiff filed her complaint alleging age discrimination and breach of contract related to her removal from the OB call schedule and the termination of her employment agreement. On April 12, 2019, defendant moved for summary judgment seeking dismissal of plaintiff's complaint with prejudice. On May 10, 2019, after hearing oral argument, the motion judge granted defendant's motion with respect to plaintiff's breach of contract and punitive damages claims. The motion judge allowed part of plaintiff's age discrimination claim under the LAD to proceed because he found a genuine issue of material fact existed as to whether the termination of

A-1675-19T3

plaintiff's employment in November 2016 violated the LAD. Although he found that part of the age discrimination claim survived summary judgment, he ruled that plaintiff's removal from the OB call schedule did not constitute an adverse employment action.

Trial began on December 2, 2019 before Judge Lisa M. Vignuolo. After plaintiff presented her case-in-chief, defendant moved for a directed verdict, which the trial judge granted. The trial judge held that plaintiff had failed to prove a prima facie claim of discrimination because the evidence established that she was not able to perform her job towards the end of October 2015, the record was devoid of any evidence of age discrimination, and there was no evidence of a causal connection between plaintiff's damages and some adverse employment action by defendant. In granting defendant's motion, the trial judge recognized the motion judge's prior ruling on summary judgment that defendant's conduct in October 2015 did not constitute adverse employment action as the law of the case.

On appeal, plaintiff raises the following points for this court's consideration:

> POINT I
>
> THE [MOTION JUDGE] COMMITED ERROR IN
> FINDING THAT [DEFENDANT'S] ACTION IN

A-1675-19T3

OCTOBER 2015 DID NOT CONSTITUTE AN ADVERSE EMPLOYMENT ACTION[.]

A. [Plaintiff] Established A Prima Facie LAD Case[.]

B. [Plaintiff] Demonstrated That [Defendant's] Business Reason Was Pretext[.]

POINT II

THE [MOTION JUDGE] ERRED IN DISMISSING [PLAINTIFF'S] CLAIM FOR PUNITIVE DAMAGES UNDER THE LAD[.]

POINT III

THE TRIAL [JUDGE] ERRED IN GRANTING [A] DIRECTED VERDICT[.]

We disagree and affirm.

I.

We reject plaintiff's argument that the motion judge erred in granting summary judgment in favor of defendant because SAA's actions in October 2015 constituted an adverse employment action, plaintiff established a prima facie LAD case, and plaintiff established that defendant's business reason for the termination was pretext.

We review a grant of summary judgment using the same standard that governs the motion judge's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).

A-1675-19T3

Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); accord R. 4:46-2(c). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472 (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

The LAD, N.J.S.A. 10:5-12, prohibits employment discrimination based on an employee's age. In pertinent part, N.J.S.A. 10:5-12(a) provides as follows:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . [f]or an employer, because of the . . . age . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment[.]

[See also N.J.S.A. 10:5-4.]

"All LAD claims are evaluated in accordance with the United States Supreme Court's burden-shifting mechanism" established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 546 (2013). A plaintiff claiming age discrimination must first present evidence establishing a prima facie case of discrimination by showing age played a determinative role in the adverse employment action. Bergen Commer. Bank v. Sisler, 157 N.J. 188, 212-13 (1999). Upon plaintiff's demonstration of a prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. Id. at 210-11.

"[T]o successfully assert a prima facie claim of age discrimination under the LAD, plaintiff must show that: (1) she was a member of a protected group; (2) her job performance met the 'employer's legitimate expectations'; (3) she was terminated; and (4) the employer replaced, or sought to replace, her." Nini v. Mercer Cty. Cmty. Coll., 406 N.J. Super. 547, 554 (App. Div. 2009) (quoting Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005)), aff'd, 202 N.J. 98, (2010). Satisfaction of the fourth element "require[s] a showing that the plaintiff

was replaced with 'a candidate sufficiently younger to permit an inference of age discrimination.'" Bergen Commer. Bank, 157 N.J. at 213 (quoting Kelly v. Bally's Grand, Inc., 285 N.J. Super. 422, 429 (App. Div. 1995)), or that otherwise creates an inference of age discrimination, Reynolds v. Palnut Co., 330 N.J. Super. 162, 168-69 (App. Div. 2000). A plaintiff must "show that the prohibited consideration[, age,] played a role in the decision[-]making process and that it had a determinative influence on the outcome of that process." Garnes v. Passaic Cty., 437 N.J. Super. 520, 530 (App. Div. 2014) (first alteration in original) (quoting Bergen Commer. Bank, 157 N.J. at 207). "Although the discrimination must be intentional, an employee may attempt to prove employment discrimination by using either direct or circumstantial evidence." Ibid. (quoting Bergen Commer. Bank, 157 N.J. at 208).

If a plaintiff establishes a prima facie case, creating an inference of discrimination, the burden of production then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the employer's action." Zive, 182 N.J. at 449 (citing Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596 (1988)). Where the defendant does so, "the burden of production shifts back to the employee to prove by a preponderance of the evidence that the reason articulated by the employer was merely a pretext for discrimination and not the

true reason for the employment decision." Ibid. "To prove pretext, a plaintiff may not simply show that the employer's reason was false but must also demonstrate that the employer was motivated by discriminatory intent." Ibid. (citing Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002)). At all times, however, the burden of proof that the employer engaged in intentional discrimination remains with the employee. Clowes, 109 N.J. at 596.

The employer is entitled to summary judgment if, after proffering a nondiscriminatory reason for its decision, plaintiff cannot "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Zive, 182 N.J. at 455-56 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Defendant moved for summary judgment seeking dismissal of plaintiff's complaint with prejudice and arguing that plaintiff failed to set forth evidence to support her claim for breach of contract; plaintiff's temporary removal from the OB call schedule in October 2015 was not an adverse employment action; plaintiff failed to show that defendant's legitimate business decision was a pretext for age discrimination; and plaintiff failed to set forth any evidence to

support a claim for punitive damages. In opposition, plaintiff contended that her temporary removal from the OB call schedule was effectively termination and that a genuine issue of disputed material fact existed as to whether that removal constituted an adverse employment action under the LAD.

On May 10, 2019, after hearing oral argument, the motion judge granted defendant's motion for summary judgment with respect to plaintiff's claims for breach of contract and punitive damages.[1] In dismissing these claims, the motion judge held:

> There is no question that defendant did company with . . . the employment agreement and I find that there is no basis, no factual basis upon which a reasonable finder of fact could determine that there was a breach of the agreement itself . . . . I didn't hear really any objection to the punitive damages claims being dismissed because there really is no evidence of an intentional decision on the part of [SAA], Dr. Paris or anyone else to terminate her employment for alleged deficiencies. So therefore, the breach of contract claims and the punitive damage claims are dismissed.

The motion judge allowed part of plaintiff's age discrimination claim to proceed because he found a genuine issue of material fact existed as to whether the termination of plaintiff's employment in November 2016 violated the LAD.

---

[1] Plaintiff does not contest the dismissal of her breach of contract claim on appeal.

Although part of plaintiff's age discrimination claim survived summary judgment, the motion judge ruled that plaintiff's temporary removal from the call schedule did not constitute an adverse employment action. Applying our standard of review, we conclude that the motion judge's grant of summary judgment in favor of defendant was proper because plaintiff failed to show she suffered an adverse employment action or that age played a role in her termination.

Plaintiff cannot establish that she suffered an adverse employment action as a matter of law. She was not discharged, suspended, or demoted in October 2015. There is no dispute that she did not suffer any reduction in rank, compensation, or title. The record makes clear that plaintiff was temporarily removed from the overnight OB call schedule after well-grounded complaints were filed by both physicians and nurses not affiliated with SAA after she rendered substandard treatment to a patient, which necessitated an involuntary hysterectomy. Plaintiff admitted that she continued to work her regular scheduled shifts and that her pay and benefits did not change. Three weeks later, following investigations into plaintiff's care, she was permitted to be restored to the OB call schedule provided she complete simulation training. At this point,

13

plaintiff was medically unable to perform the simulation. Plaintiff said she "was not in any shape [or] form" to take the simulation and never did.

To the extent that plaintiff claims that her subjective feelings of embarrassment or ridicule due to either being supervised, removed from the schedule, or required to complete a simulation are sufficient to constitute an adverse employment action, this claim also fails as a matter of law. See Heyert v. Taddese, 431 N.J. Super. 388, 413-14 (App. Div. 2013) (noting that self-serving statements are insufficient to preclude summary judgment); Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div.), certif. denied and appeal dismissed, 211 N.J. 608 (2012) (finding that summary judgment will not be precluded by "[b]are conclusory assertions[] without factual support in the record"). We therefore agree with the motion judge's finding that the October 2015 events did not amount to an adverse employment action.

Taking away the temporary removal of plaintiff from the OB call schedule in October 2015, the only other event left was plaintiff's termination under the employee agreement in November 2016. On November 7, 2016, SAA served plaintiff with a letter terminating her employment with SAA pursuant to the provision that "[SAA] may terminate [plaintiff's] employment under [the]

Agreement upon written notice to [plaintiff] in the event [plaintiff] shall have a [d]isability for ninety-one days . . . or more in any one hundred twenty . . . consecutive day period." After October 2015, when plaintiff began treatment with Dr. Hasan for her PTSD, she was not able to continue working as an anesthesiologist. She turned down other offers because she was medicated and felt her mental health status precluded her ability to perform the work required.

Plaintiff did not present any evidence showing that her age played a role in defendant's actions. Although plaintiff claims that a few of her colleagues had asked her when she was going to retire, she testified during her deposition that such discussion "was just a general talk . . . in the anesthesia lounge" and such remarks were made six to twelve months prior to the incident and her last shift on October 26, 2015. In contrast, defendant presented evidence showing that plaintiff was unable to return work in the capacity required as of October 2015. Without the ability to perform work, her LAD claim fails. See Zive, 182 N.J. at 455-56. We therefore conclude that the motion judge properly granted summary judgment in favor of defendant.

## II.

Next, plaintiff argues that the motion judge erred by dismissing her claim for punitive damages. Plaintiff maintains that the motion judge's dismissal of

15

punitive damages on summary judgment while allowing part of her LAD claim to survive was "logically inconsistent."

"In exceptional cases punitive damages are awarded as a punishment of the defendant and as a deterrent to others from following his [or her] example." Di Giovanni v. Pessel, 55 N.J. 188, 190 (1970); Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 500 (1994).  Punitive damages under the LAD are governed by N.J.S.A. 10:5-3, which authorizes the award of punitive damages for an LAD violation, and New Jersey's Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17. There are two essential prerequisites to an award of punitive damages under the LAD: proof of actual participation of upper management or willful indifference; and proof that the conduct was especially egregious. Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 274 (2010) (citing Rendine v. Pantzer, 141 N.J. 292, 313-14 (1995)).

The Court in Rendine, 141 N.J. at 314, described the conduct that is sufficiently egregious to warrant punitive damages as follows:

> [T]he defendant's conduct must have been wantonly reckless or malicious.  There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wil[l]ful disregard of the rights of another . . . . The key to the right to punitive damages is the wrongfulness of the intentional act.

[(quoting Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49-50 (1984)).]

In dismissing plaintiff's claim, the motion judge held:

I didn't hear really any objection to the punitive damages claims being dismissed because there really is no evidence of an intentional decision on the part of [SAA], Dr. Paris or anyone else to terminate her employment for alleged deficiencies. So therefore, the breach of contract claims and the punitive damage claims are dismissed.

The dismissal was warranted here where plaintiff did not show participation by management, willful indifference, or especially egregious conduct. Plaintiff nevertheless contends that because an issue of material fact existed as to whether SAA violated the LAD, she therefore sustained her burden of alleging sufficient facts to state a claim for punitive damages. Plaintiff cites to no authority—and indeed none exists—that a plaintiff is entitled to present a claim for punitive damages by showing an alleged violation of the LAD. Rather, case law demonstrates that a deficient claim for punitive damages may be dismissed, even where a LAD claim survives summary judgment. See Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super 252, 273 (App. Div. 1996) (affirming the grant of summary judgment dismissal of plaintiff's punitive damages claim where defendant's conduct was not "especially egregious" or "willfully indifferent," despite reversing the dismissal of plaintiff's sexual harassment

claim under the LAD). The motion judge's dismissal was therefore proper where plaintiff did not show participation by management, willful indifference, or especially egregious conduct, regardless of whether part of plaintiff's LAD claim survived summary judgment.

III.

Lastly, we reject plaintiff's argument that the trial judge erred both "in following as the law of the case the motion [judge's] rulings" and "on that basis granting SAA a directed verdict."

In deciding a motion for directed verdict at the close of the evidence, the trial judge must "accept as true all evidence presented . . . and the legitimate inferences drawn therefrom, to determine whether the proofs are sufficient to sustain a judgment[.]" Prioleau v. Kentucky Fried Chicken, Inc., 434 N.J. Super. 558, 569 (App. Div. 2014), aff'd, 223 N.J. 245 (2015). The trial judge is not concerned with "the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Ibid. (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)).

If reasonable minds could reach different conclusions, the motion must be denied. Id. at 569-70. However, if the evidence is such that one party must prevail as a matter of law, then a directed verdict is appropriate. Frugis v.

Bracigliano, 177 N.J. 250, 269 (2003).  We will apply the same standard that governed the trial judge when reviewing an order granting or denying a motion for directed verdict.  Ibid.

The law of the case doctrine generally prohibits a second judge, in the absence of additional developments or proofs, from differing with an earlier ruling. See Lombardi v. Masso, 207 N.J. 517, 538-39 (2011).  The doctrine is a "non-binding rule intended to 'prevent re[-]litigation of a previously resolved issue.'" Id. at 538 (quoting In re Estate of Stockdale, 196 N.J. 275, 311 (2008)). "A hallmark of the law of the case doctrine is its discretionary nature, calling upon the deciding judge to balance the value of judicial deference for the rulings of a coordinate judge against those 'factors that bear on the pursuit of justice and, particularly, the search for truth.'" Id. at 539 (quoting Hart v. City of Jersey City, 308 N.J. Super. 487, 498 (App. Div. 1998)).  While the law of the case doctrine is a discretionary, non-binding rule, "[p]rior decisions on legal issues should be followed unless there is substantially different evidence at a subsequent trial, new controlling authority, or the prior decision was clearly erroneous." Sisler v. Gannett Co., 222 N.J. Super. 153, 159 (App. Div. 1987).

After plaintiff presented her case-in-chief, defendant moved for a directed verdict arguing that plaintiff failed to prove a prima facie case of age

discrimination under the LAD; present any evidence of pretext; and prove that she suffered any damages as a result of the alleged age based discrimination. The trial judge granted defendant's motion for a directed verdict and held that plaintiff had failed to prove a prima facie case of age discrimination because the evidence established that she was not able to perform her job at SAA beginning in the end of October 2015; the record was devoid of any evidence of age discrimination; and there was no evidence of a causal connection between plaintiff's damages and some adverse employment action by defendant. In granting defendant's motion for a directed verdict, the trial judge recognized the motion judge's prior ruling on summary judgment that defendant's conduct in October 2015 did not constitute an adverse employment action as the law of the case. The trial judge expanded upon the issue of plaintiff's removal from the OB call schedule:

> [T]he record is clear that plaintiff never received a reduction in her salary or anything associated with actions that were taken following the [patient] incident that had a disparaging effect upon her ability to collect her salary and to proceed under the terms of the contract, which is what she did.

There was no reason for the trial judge to depart from the motion judge's findings on summary judgment because there was no new controlling legal authority and the ruling was not "clearly erroneous" because it was based on the prevailing

case law and the evidence in the record. Plaintiff attempts to assert that there was substantially different evidence presented at trial, which would warrant a departure from the motion judge's ruling. Specifically, plaintiff asserts for the first time that SAA testified that it sought to terminate plaintiff before any formal investigation had concluded. This contention is belied by the record, which clearly reflects that no adverse employment action occurred in October 2015. Specifically, the record shows that after complaints were made about her substandard care plaintiff continued to work all of her regular shifts, plaintiff was only temporarily removed from the OB call schedule for safety reasons, plaintiff continued to work her October 26, 2015 shift even after she believed she was terminated, SAA decided not to terminate plaintiff after completing its investigation, plaintiff's pay and benefits did not change when she was removed from the OB call schedule, and plaintiff remained an employee of SAA and was on medical leave until her employment was terminated pursuant to the terms of the employment agreement in November 2016. We therefore conclude that judge's grant of defendant's motion for a directed verdict was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1675-19T3