**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2292-23

GISELA VEGA,

    Plaintiff-Appellant,

v.

ELIZABETH BOARD OF
EDUCATION,

    Defendant-Respondent.

_____

Submitted September 16, 2025 – Decided October 23, 2025

Before Judges Gilson and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1584-20.

Gisela Vega, appellant pro se.

La Corte, Bundy, Varady & Kinsella, attorneys for respondent (Robert F. Varady, of counsel; Christina M. DiPalo, on the brief).

PER CURIAM

    Plaintiff Gisela Vega appeals from the February 20, 2024 trial court order

granting defendant Elizabeth Board of Education summary judgment and dismissing plaintiff's complaint with prejudice. Plaintiff's complaint alleged claims under: the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, for age discrimination and hostile work environment; and Pierce[1] for wrongful discharge. After reviewing the record, parties' arguments, and applicable law, we affirm.[2]

I.

We view the following facts established in the summary judgment record in a light most favorable to plaintiff, the non-moving party. See Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023). Plaintiff began working for defendant as a substitute teacher in 2003. In September 2016, defendant hired plaintiff for the non-tenured, at-will position of Child Development Associate (CDA). Defendant employed plaintiff under yearly contracts that defendant could opt not to renew.

---

[1] Pierce v. Ortho Pharm. Corp., 84 N.J. 58 (1980).

[2] On September 8, 2025, plaintiff filed an application for permission to file an emergent motion to stay this appeal alleging that defendant's appendix was deficient. On September 9, we denied plaintiff's application but noted that she could file a motion to strike defendant's appendix in the normal course. On September 17, plaintiff filed the motion, which defendant opposed. On October 2, we denied the motion as plaintiff failed to demonstrate grounds to strike defendant's appendix.

A-2292-23

Defendant first assigned plaintiff to work in a pre-kindergarten classroom at Winfield Scott School No. 2 (Winfield) with teacher Angela Gyftopoulos. As a CDA, plaintiff worked under Winfield's Principal Samuel Etienne. Plaintiff's job responsibilities included "perform[ing] all . . . duties as deemed necessary by the classroom teacher and the building principal."

On November 2, 2017, after witnessing issues in the classroom, Gyftopoulos emailed Etienne with concerns about plaintiff's work performance and classroom management skills. Gyftopoulos' email provided the following: she communicated with Vice Principal Shante Rorie "about getting a new assistant"; the school's social worker had "spoke[n] to [plaintiff]" and was attending class "to give [plaintiff] some techniques and strategies to use"; and plaintiff's "actions and impressions in class" demonstrated she was "overwhelmed at times with the [CDA] responsibilities."

Gyftopoulos sent Etienne emails on November 14 and 15 concerning plaintiff's work performance and detailing plaintiff's difficulties with a student, T.M., during Gyftopoulos' "prep time" and "lunch time." T.M. was referred to the Preschool Intervention and Referral Support Services Team (PIRT) for behavioral concerns. In the November 15 email, Gyftopoulos asserted that after returning "from lunch [that day, she] found the whole class up and in . . .

3

disarray and T.M. crying on the floor" under plaintiff's supervision.

After plaintiff learned of an upcoming PIRT meeting for T.M., she asked Etienne whether obtaining a personal aide for T.M. should be addressed because the situation "was causing a lot of tension with" Gyftopoulos, and T.M.'s "consistent behavioral problems were affecting the entire classroom." The Early Childhood Education Department Supervisor had previously told Rorie that resources for a one-on-one aide for T.M. were unavailable, and she believed that "part of . . . [T.M.'s] problem [wa]s that both the teacher and the CDA lack[ed] classroom management skills." On November 29, Etienne notified plaintiff that, as of December 1, she was being transferred to Stewart's[3] classroom, which plaintiff described as the "most unfavorable classroom."

The same day, plaintiff met with defendant's Chief of Operations Francisco Cuesta to "report all of [the] hostility she was going through at Winfield" and request a "transfer[] out of" Winfield. Plaintiff informed Cuesta that Gyftopoulos asked her to "restrain" T.M. even when he was not "in danger or a threat to others." She also told Cuesta that Gyftopoulos stated plaintiff "was getting too old for the job" and could not "handle these pre[-]kindergarten children." Plaintiff also reported to Cuesta that Etienne mentioned how "Cuesta

---

[3] Stewart's first name is not in the record.

A-2292-23

does not like [plaintiff]," which Cuesta refuted.

Once plaintiff moved to Stewart's classroom, Talisha Robinson became Gyftopoulos' CDA. Immediately prior to replacing plaintiff, Robinson had worked as "a personal assistant working in a special education classroom at [Winfield]." Robinson's vacated special education position was filled by Taliah Sessoms. Plaintiff believed Robinson was in her "late [twenties]," and Sessoms was a "younger woman."

On March 14, 2018, plaintiff asked Etienne for additional coverage on March 16 because the classroom lunch assistant would be out. When Etienne did not provide coverage, plaintiff told Etienne's secretary that she "could not serve lunch because" one of the students "was trying to run out of the classroom." Following lunch, Etienne informed Stewart that "he was switching . . . [p]laintiff back" to Gyftopoulos' classroom, which plaintiff overheard. Plaintiff recalled at her deposition that she had complained to Etienne that "if you have [fifteen] to [eighteen] children and one of them [is] . . . running out the door, common[] sense tells you that person should not be by themselves."

On March 17, plaintiff advised Etienne that she felt "very uncomfortable thinking about the possibility . . . [she was] going to get switched again. There was a lot of tension with . . . [Gyftopoulos] due to an extreme behavioral problem

A-2292-23

with a particular student." On March 23, plaintiff again requested to transfer schools.

On March 28, Etienne emailed Cuesta recommending plaintiff's "non-renewal/termination" because she:

> [H]ad difficulty working with instructors and children due to her inability to manage students on her own during lunch and naptime. [She] was move[d] into another classroom in order to deal with the initial challenge of working with one instructor. However, the new instructor is currently having the same issues and concerns with [plaintiff] as well.

Etienne attached the emails expressing concerns about plaintiff's work performance. On April 24, Etienne again emailed Cuesta to recommend not renewing plaintiff's contract "for the 2018-2019 school year" because she was "unable to manage [the] classroom and work with students effectively." Plaintiff worked in Stewart's classroom until May 2018 when "the same issues with [p]laintiff's job performance[,] which occurred in . . . Gyftopoulos' classroom[,] also occurred in" Stewart's classroom. On May 3, human resources transferred plaintiff to its main administrative building. Defendant decided not to renew plaintiff's contract, and her last day of employment was June 27.

6

On June 20, upon plaintiff's request, Superintendent Olga Hugelmeyer provided "a statement of reasons for the non-renewal of [her] employment contract," which:

> [A]dvised [plaintiff] that [defendant] determined that non-renewal of [her] employment contract was necessary in light of documented teaching performance issues and difficulties working with classroom instructors and students. Specifically, [she] ha[d] been found to be unable to manage a classroom and work with students effectively.
>
> [Defendant] note[d] that [plaintiff] w[as] moved to another classroom to mitigate issues relating and/or arising from [her] work with a particular instructor. However, the same job performance issues persisted.

After plaintiff's non-renewal, Sessoms, who had been transferred to a different school to work as a CDA, was transferred back to Winfield to replace plaintiff.

Plaintiff thereafter filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission (EEOC) based on "race," "retaliation," "age," and "national origin." Defendant denied the charges, citing the "well-documented" reasons for non-renewal. Following an investigation, the EEOC informed plaintiff by letter in August 2019 that it dismissed her charge.

On May 14, 2020, plaintiff filed a complaint against defendant alleging: LAD age discrimination; a hostile work environment LAD claim; and a Pierce

7

claim. On September 8, 2023, defendant moved for summary judgment, which plaintiff opposed.

On February 20, 2024, after oral argument, the motion judge issued an order accompanied by a cogent and thorough statement of reasons, granting defendant's summary judgment motion and dismissing plaintiff's claims with prejudice. After affording plaintiff all reasonable factual inferences in her favor, the judge found plaintiff made a prima facie showing of LAD age discrimination but had failed to raise a genuine issue of material fact that defendant's non-renewal reasons were pretextual. The judge referenced plaintiff's assertion that defendant replaced her with "two younger employees" but then noted defendant already employed the younger teachers. Further, the judge reasoned that after plaintiff's employment issues continued in Stewart's classroom, plaintiff admitted that she requested not to "get switched back" to Gyftopoulos' classroom because "there was tension with her." The judge further explained that although Gyftopoulos made one comment related to plaintiff's age, which plaintiff reported to Cuesta, plaintiff "failed to show . . . how such comment was the reason [she] was not renewed."

In addressing plaintiff's hostile work environment claim, the judge also found plaintiff presented no genuine issue of material fact showing Gyftopoulos'

single "isolated" comment about her age was "severe or pervasive" conduct sufficient to create a hostile work environment. Regarding plaintiff's <u>Pierce</u> claim, the judge found defendant's non-renewal reasons did not "mention . . . plaintiff's refusal to restrain T.M." Therefore, the judge determined "[n]o evidence ha[d] been provided . . . to show that the reason for plaintiff's non-renewal was because of [her] failure to restrain T.M." With respect to plaintiff's <u>Pierce</u> claim based on her reporting a classroom ratio issue, the judge found "plaintiff had not stated to . . . Etienne that there was a violation of law or public policy due to the . . . ratio."[4]

On appeal, plaintiff, representing herself, argues the judge erred in failing to: review existing genuine issues of material fact concerning LAD prongs two and four; find a hostile work environment based on the totality of the circumstances; and properly interpret her <u>Pierce</u> claim that alleged defendant violated clear public policy mandates for students with special needs and/or disabilities.

---

[4] During oral argument, the judge considered plaintiff's newly presented evidence including: her human resources complaint requesting a transfer dated November 29, 2017; transfer requests dated November 29, 2017, and March 23, 2018; her job performance evaluation for 2016 to 2017; two emails concerning attendance coverage dated January 24, 2018, and March 15; and defendant's agenda meeting minutes dated March 15, 2018, June 21, and July 19.

A-2292-23

II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). To rule on summary judgment, courts must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)). Our review entails determining "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." C.V. ex rel C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)) (internal quotation marks omitted).

A-2292-23

"Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alterations in original) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529). "Summary judgment should be granted 'if the discovery and any affidavits show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" DeSimone, 256 N.J. at 180-81 (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 405 (2013)) (internal quotation marks omitted). Insubstantial arguments based on assumptions or speculation are not enough to overcome summary judgment. Brill, 142 N.J. at 529; see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) (explaining that "'conclusory and self-serving assertions by one of the parties are insufficient to overcome' a motion for summary judgment" (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005))).

## III.

### A. LAD Age Discrimination Claim

Plaintiff argues she has demonstrated genuine issues of material fact to withstand summary judgment on her LAD age discrimination claim.

Specifically, plaintiff alleges she demonstrated a prima facie showing of age discrimination and that defendant's reasons for not renewing her—poor work performance—were "pretextual in [their] entirety." The record does not support plaintiff's contention.

The LAD's remedial "'purpose is "nothing less than the eradication of the cancer of discrimination."'" C.V., 255 N.J. at 306-07 (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993)). It prohibits unlawful employment practices and discrimination "based on race, religion, sex, or other protected status[] that creates a hostile work environment." Cutler v. Dorn, 196 N.J. 419, 430 (2008); see also N.J.S.A. 10:5-12(a). "'Without doubt, the LAD "unequivocally expresses a legislative intent to prohibit discrimination in all aspects of the employment relationship, including hiring and firing, compensation, the terms and conditions of employment, and retirement."'" Schiavo v. Marina Dist. Dev. Co., LLC, 442 N.J. Super. 346, 367 (App. Div. 2015) (quoting Alexander v. Seton Hall Univ., 204 N.J. 219, 227-28 (2010)).

To establish a prima facie case of wrongful termination based on age discrimination, a plaintiff must prove he or she was: (1) in a protected class; (2) performing the job at a level that met the employer's legitimate expectations; (3) nevertheless discharged; and (4) "replaced by 'a candidate sufficiently younger

to permit an inference of age discrimination.'" Young v. Hobart W. Grp., 385 N.J. Super. 448, 458 (App. Div. 2005) (quoting Bergen Com. Bank v. Sisler, 157 N.J. 188, 210-13 (1999)); see also Meade v. Township of Livingston, 249 N.J. 310, 329 (2021) (noting that for the second prong of the prima facie case, "[a]ll that is necessary is that the plaintiff produce evidence showing that [they were] actually performing the job prior to the termination" (quoting Zive v. Stanley Roberts, Inc., 182 N.J. 436, 454 (2005))). "However, '[t]here is no single prima facie case that applies to all employment discrimination claims.'" Schiavo, 442 N.J. Super. at 367 (alteration in original) (quoting Victor v. State, 203 N.J. 383, 408 (2010)).

To address the difficulty of proving discriminatory intent, our Supreme Court has adopted the "burden-shifting methodology" set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Meade, 249 N.J. at 328. Under this burden-shifting analysis:

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant must then show a legitimate non[-]discriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.
>
> [Ibid. (quoting Henry v. N.J. Dep't of Hum. Servs., 204 N.J. 320, 331 (2010)).]

"[E]stablishment of a prima facie case gives rise to a presumption that the employer unlawfully discriminated against the employee." Id. at 329 (quoting Sisler, 157 N.J. at 210). "The employer may obliterate that presumption 'with admissible evidence of a legitimate, non[]discriminatory reason' for taking the employment action at issue." Garnes v. Passaic Cnty., 437 N.J. Super. 520, 537 (App. Div. 2014) (quoting Sisler, 157 N.J. at 210). "The employer only carries the burden of production," not the burden of persuasion. Greenberg v. Camden Cnty. Vocational & Tech. Sch., 310 N.J. Super. 189, 199 (App. Div. 1998). "At that point, the employee has an opportunity to prove that the employer's asserted reason for the action is not true and is merely a pretext for discriminating among employees on an impermissible basis." Garnes, 437 N.J. Super. at 537.

In addressing plaintiff's age discrimination claim, we first note she has factually made a prima facie showing of age discrimination based on: her status as a woman in her late fifties at the time of her non-renewal; her years of performing as a CDA allegedly without incident prior to her non-renewal; defendant's decision not to renew plaintiff as a CDA in 2018; and her allegation that two younger employees replaced her.

We next consider under McDonnell's burden-shifting analysis whether plaintiff has shown a material issue of fact that defendant's non-discriminatory

14

reasons for not renewing her CDA contract were pretextual. Undisputedly, before defendant decided not to renew plaintiff, Etienne had received multiple complaints regarding plaintiff's work performance. Gyftopoulos had emailed Etienne on three separate occasions about plaintiff's inability to perform CDA duties, and Gyftopoulos requested intervention from Rorie and the school social worker. Gyftopoulos had reported plaintiff's negative performance before plaintiff was transferred to Stewart's classroom, and notably, the transfer was approximately four months before Etienne recommended plaintiff's non-renewal. Gyftopoulos' concerns regarding plaintiff's CDA performance also "persisted" in Stewart's classroom. Defendant consequently found plaintiff was "unable to manage a classroom and work with students effectively." The trial judge correctly determined that defendant offered legitimate, non-discriminatory reasons for plaintiff's non-renewal, namely, her poor job performance. See Zive, 182 N.J. at 449.

To support an inference of pretext, plaintiff references that defendant replaced her with Robinson and Sessoms, two "younger" employees. Plaintiff's contentions do not establish discriminatory pretext. As the judge correctly found, defendant already employed Robinson and Sessoms. Further, when Robinson replaced plaintiff on December 1, 2017, plaintiff was transferred "to

work with . . . Stewart." At that time, Etienne had not recommended plaintiff for non-renewal. Etienne's recommendation did not come until March 28, 2018, after plaintiff's performance issues persisted in Stewart's classroom, and plaintiff objected to being transferred back to Gyftopoulos' classroom.

We are further unpersuaded by plaintiff's additional argument that she reported to Cuesta that Gyftopoulos stated plaintiff was "too old to handle preschool children." Plaintiff has failed to demonstrate that Gyftopoulos' statement, which we view in the light most favorably to plaintiff, had any nexus to defendant's decision to not renew plaintiff's contract. Notably, plaintiff acknowledged Gyftopoulos did not make "any other comments with respect to her age," and Stewart, Etienne, and Cuesta "[n]ever commented on her age."

For these reasons, we conclude plaintiff has failed to establish a material issue of fact showing that defendant's proffered reasons for non-renewal were illegitimate and pretext for age discrimination. Indeed, "[t]o prove that the employer's reason is pretext[ual], 'a plaintiff must do more than simply show that the employer's [proffered legitimate, non-discriminatory] reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent.'" Crisitello, 255 N.J. at 232 (second alteration in original) (quoting Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002)). A plaintiff

alleging direct or circumstantial evidence of pretext "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in' the proffered reason that a factfinder could reasonably find it incredible." Schiavo, 442 N.J. Super. at 369 (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)).

In sum, plaintiff has failed to meet her burden of showing, by a preponderance of the evidence, that defendant's purported legitimate reasons for not renewing her were pretextual. Thus, the record and the law support the dismissal of her LAD age discrimination claim.

## B. Hostile Work Environment LAD Claim

Plaintiff next contends the judge erred in dismissing her hostile work environment claim without conducting a complete review of the totality of the circumstances, including the "frequency, duration, and severity of the conduct" as well as the "cumulative effects." Plaintiff alleges she presented "competent evidentiary documentation" demonstrating "patterns of antagonism," "animosity," and that Etienne "harbored intentional discriminatory animus." Having reviewed the record and the law, we discern no merit to these contentions.

A-2292-23

The elements necessary to state a prima facie hostile work environment LAD claim are: "(1) that plaintiff is in a protected class; (2) that plaintiff was subjected to conduct that would not have occurred but for that protected status; and (3) that it was severe or pervasive enough to alter the conditions of employment." Victor, 203 N.J. at 409. It is well-established that an employer may be "liable if [a] supervisor's conduct creates a hostile work environment." Gaines v. Bellino, 173 N.J. 301, 312 (2002). "[T]he elements of the prima facie case vary depending upon the particular cause of action." Schiavo, 442 N.J. Super. at 367-68 (quoting Victor, 203 N.J. at 408).

We recognize that "a single incident of invidious harassment can create a hostile work environment." Taylor v. Metzger, 152 N.J. 490, 499 (1998); see also El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 179 (App. Div. 2005) ("A single comment, if sufficiently severe, may be enough to create a hostile working environment."). Further, alleged acts of discrimination viewed cumulatively may be sufficient to present a hostile work environment claim to a jury. See Shepherd v. Hunterdon Dev. Ctr., 174 N.J. 1, 18 (2002). But "[t]he LAD is not a general civility code for workplace conduct." Shepherd v. Hunterdon Dev. Ctr., 336 N.J. Super. 395, 416 (App. Div. 2001) (quoting Heitzman v. Monmouth Cnty., 321 N.J. Super. 133, 147 (App. Div. 1999)), aff'd

18

in part, rev'd in part on other grounds, 174 N.J. 1 (2002). "'[E]pithets or comments which are "merely offensive"' will not establish a hostile work environment claim." El-Sioufi, 382 N.J. Super. at 179 (quoting Heitzman, 321 N.J. Super. at 147). Further, employees are "not entitled to a perfect workplace, free of annoyances and colleagues [they] find[] disagreeable." Herman v. Coastal Corp., 348 N.J. Super. 1, 23 (App. Div. 2002) (quoting Lynch v. New Deal Delivery Serv. Inc., 974 F. Supp. 441, 452 (D.N.J. 1997)).

Plaintiff has failed to make a prima facie showing of "'severe or pervasive' conduct . . . that would 'make a reasonable [person] believe that the conditions of employment are altered and [that the] working environment is hostile.'" Cutler, 196 N.J. at 431 (alterations in original) (quoting Lehmann, 132 N.J. at 604). Viewing the totality of the circumstances plaintiff avers and providing all favorable inferences, she has failed to make a prima facie showing of a hostile work environment based on her claims that: she was transferred from Gyftopoulos' classroom to Stewart's classroom and replaced by two younger employees; defendant failed to afford a school transfer; defendant assigned her to a windowless office; Gyftopoulos made a single comment that plaintiff was "too old to handle preschool children"; and Etienne commented that "Cuesta does not like [her]." These allegations insufficiently support severe or pervasive

19

age discrimination when viewed in the context of the record. Stated another way, viewing the incidents cumulatively, the record does not support plaintiff's hostile work environment claim. Therefore, because she fails to proffer sufficient competent facts to support a hostile work environment, we conclude summary judgment was appropriately granted.

## C. Pierce Claim

Plaintiff next contends the judge erred by misinterpreting her Pierce claim, as she alleged violations of clear public policies. Specifically, she avers the judge failed to recognize that she met Pierce's threshold based on her complaints to Etienne and Cuesta concerning "clear mandates . . . for students with special needs." Plaintiff's Pierce claim is based on her following alleged actions: reporting that Gyftopoulos asked her to physically restrain T.M.; complaining to Etienne about the student-teacher ratio; requesting T.M. have an aide because plaintiff was unable to be alone in the classroom; and voicing concerns regarding T.M. not receiving a proper student evaluation. Plaintiff argues she proffered evidence of violations of the "New Jersey Administrative Codes" she raised, and that resulted in her non-renewal. These contentions also are not supported by the record or the law.

The Supreme Court held in Pierce that "[a]n [at-will] employee has a cause

A-2292-23

of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." 84 N.J. at 72. "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." Ibid. "Unless an employee at will identifies a specific expression of public policy, he [or she] may be discharged with or without cause." Ibid. The public policy must be "clearly identified and firmly grounded." MacDougall v. Weicher, 144 N.J. 380, 391 (1996). "A vague, controversial, unsettled, and otherwise problematic public policy does not constitute a clear mandate." McVey v. AtlantiCare Med. Sys. Inc., 472 N.J. Super. 278, 286 (App. Div. 2022) (quoting MacDougall, 144 N.J. at 392).

To support a Pierce claim, a plaintiff must show that he or she made a sufficient expression of "disagreement with a corporate policy, . . . or decision based on a clear mandate of public policy." Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 109 (2008). The Tartaglia Court elucidated:

> It requires, as well, a sufficient expression of that disagreement to support the conclusion that the resulting discharge violates the mandate of public policy and is wrongful. That is to say, a complaint to an outside agency will ordinarily be a sufficient means of expression, but a passing remark to co-workers will not. A direct complaint to senior corporate management would likely suffice, but a complaint to an immediate supervisor generally would not.

21

[Ibid.]

"Baseless complaints or expressions of purely personal views about the meaning of public policies will not meet the test for a 'clear mandate' regardless of the manner or mode in which they are voiced." Ibid.

Plaintiff claims she reported to Cuesta that Gyftopoulos' requests to hold T.M. down violated N.J.S.A. 18A:46. See N.J.S.A. 18A:46-13.5(a) (stating "[a] school district . . . that utilizes physical restraint on students with disabilities shall ensure" the "(1) physical restraint is used only in an emergency in which the student is exhibiting behavior that places the student or others in immediate physical danger"). We note plaintiff admitted at her deposition that she would have to restrain T.M. when he was "a threat to others or hurting himself," which occurred "many times." Also, we note defendant's non-renewal reasons did not "mention . . . plaintiff's refusal to restrain T.M." The record does not support plaintiff's assertion that her non-renewal was "due to . . . reporting the violations that were occurring in . . . . Gyftopoulos' classroom."

Further, her argument that "the timeline of events and the temporal proximity of what transpired" alone create genuine issues of material fact signifying a causal connection between the reporting and her non-renewal is unsupported. Relevantly, Gyftopoulos sent each of the three emails to Etienne

complaining about plaintiff's work performance before plaintiff reported Gyftopoulos' student-restraint requests to Cuesta on November 29, 2017. Etienne did not recommend plaintiff's non-renewal until March 28, 2018, after further issues arose with plaintiff's work performance in Stewart's classroom. Only after learning on March 16 that Etienne intended to transfer plaintiff back to Gyftopoulos' classroom did plaintiff advise Etienne that she was "very uncomfortable" with the move and request a transfer to a different school. Etienne recommended non-renewal five days later. See Hobart, 385 N.J. Super. at 467 ("Where the timing alone is not 'unusually suggestive,' the plaintiff must set forth other evidence to establish the causal link."). Here, the timeline of events is not unusually suggestive, and plaintiff fails to point to facts establishing a causal link between her reporting and her non-renewal.

We also discern no merit to plaintiff's claims that defendant failed to ensure a reduced student-teacher ratio, T.M. had a personal student aide, and T.M. had a proper student evaluation. Plaintiff posits blanket references to N.J.A.C. 6A:14-3.3, which sets forth requirements that "[e]ach district . . . develop written procedures for students age three through [twenty-one]" for the "location, [identification,] and referral of students who may have a disability" and N.J.A.C. 6A:14-3.4, which sets forth the procedures for the "evaluation" of

23

those students. Plaintiff's conclusory statements are insufficient because while she expressed her thoughts surrounding T.M.'s needs to Etienne, the record belies that she asserted violations of a student-teacher ratio, personal aide requirement, or necessary student evaluation.

For these reasons, we conclude plaintiff has not established a genuine issue of material fact that her non-renewal was the result of her alleged reporting of violations. See House v. Carter-Wallace, Inc., 232 N.J. Super. 42, 53-54 (App. Div. 1989) ("To establish a claim under Pierce, an employee must show that he [or she] was in fact discharged in retaliation for taking action in opposition to corporate action which violates a clear mandate of public policy."). Therefore, we conclude the judge correctly granted summary judgment for defendants on plaintiff's Pierce claim.

To the extent that we have not addressed plaintiff's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

24